## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

MICHAEL EVERETTS,

on behalf of himself and all others
similarly situated,

      Plaintiff,

v.

PERSONAL TOUCH HOLDING CORP.,
a Delaware corporation,

      Defendant.

Case No.: 2:21-cv-02061 (JMA) (ARL)

### PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Michael Everetts ("Plaintiff") respectfully moves for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I.  INTRODUCTION

Defendant Personal Touch Holding Corp. ("PTHC"), through its subsidiaries, provides home health and home care personnel and related services to individuals in their homes.  S.A. ¶ 1.1.

In or about January 2021, PTHC suffered a cyber-security attack on its private cloud hosted by its managed service providers (the "Data Breach").  During the Data Breach, an unauthorized person may have accessed private cloud business records of PTHC and its direct and indirect subsidiaries, including medical treatment information, insurance card and health plan benefit

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement ("S.A."), which is attached hereto as **Exhibit A**.

numbers, medical record numbers, first and last name, address, telephone numbers, date of birth, Social Security numbers, and financial information, including check copies, credit card numbers, and bank account information.  *Id.* ¶ 1.2.

After PTHC provided notice of the Data Breach on or about March 24, 2021, Plaintiff filed a putative Class Action Complaint on April 15, 2021 in the United States District Court for the Eastern District of New York.  *Id.* ¶ 1.3.

On February 24, 2022, the parties participated in a full-day in-person mediation facilitated by an experienced JAMS mediator, Andrew Nadolna, who has over 25 years of experience in mediation.  On June 2, 2022, the parties conducted a second session with Mr. Nadolna.  Over the ensuing months, the parties continued to negotiate the terms of a potential settlement.  After coming to an agreement in principle, the parties finalized the terms of their Settlement Agreement including the attached exhibits.  *Id.* ¶ 1.5.

 Pursuant to the terms that were negotiated between them, the parties now seek the full and final resolution, discharge and settlement of all claims and causes of action asserted, or that could have been asserted, against PTHC and the Released Persons (as defined in the Settlement Agreement) arising out of or relating to the Data Breach, by and on behalf of the Representative Plaintiff and Settlement Class Members (as defined in the Settlement Agreement) and any other such actions by and on behalf of any other persons in the United States relating to the Data Breach.  *Id.* ¶ 1.6.  Those terms are memorialized in the Settlement Agreement, which provides for the resolution of all claims asserted, or that could have been asserted, against Defendant relating to the Data Breach, by and on behalf of Plaintiff and Settlement Class Members.

The relief negotiated by counsel extremely experienced in litigating privacy litigation and security incidents of the type at issue in the present litigation, and provided by the Settlement, is

designed to address the potential injuries and repercussions typically experienced by individuals whose personally identifiable information has been compromised in a security incident of the type at issue here.   Specifically, the Settlement Agreement provides that PTHC will pay up to $3,000,000.00 as an aggregate cap for, among other things: (i) valid and approved claims made by members of the Exposure Class under S.A. ¶ 2.1, (ii) valid and approved claims made by members of the Non-Exposure Class under S.A. ¶ 2.2, and (iii) settlement administration fees under S.A. ¶ 3.6.   Settlement administration will be handled by a neutral experienced in disseminating notice to class members and administrating claims of the type which may be filed by Settlement Class Members.   PTHC will also separately pay: (i) the cost of Identity Defense Total Service for members of the Exposure Class, subject to an aggregate cap of $67,000.00, (ii) a service award to Representative Plaintiff not to exceed Two Thousand Five Hundred Dollars ($2,500.00), subject to Court approval, and (iii) Proposed Class Counsel's attorney's fees, costs, and expenses not to exceed Five Hundred Ten Thousand Dollars ($510,000.00), subject to Court approval.   S.A. ¶¶ 7.2, 7.3.   Proposed Class Counsel will file a separate motion for attorneys' fees, costs, expenses, and service award at least 21 days before the deadline for objections and opt-outs.

## II. BACKGROUND

### A. Information About the Settlement

To explore and potentially negotiate a class-wide settlement before a neutral, the parties agreed on and retained Andrew Nadolna, a highly experienced mediator. Declaration of John A. Yanchunis, attached as **Exhibit B** ("Yanchunis Decl."), ¶ 16. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On February 24, 2022, the parties had a full-day mediation session with Mr. Nadolna.  *Id.* On June 2, 2022, the parties conducted a second session with Mr. Nadolna.  *Id.*  The negotiations

were hard-fought throughout, and the process was conducted at arm's length and non-collusive. *Id.* After extensive arm's length settlement negotiations conducted through Mr. Nadolna, the parties reached an agreement on the essential terms of settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 19.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, its experience with many other data breach cases, including other data breach cases in this District and before this Court, and the information provided by PTHC, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

### B.  The Terms of the Settlement Agreement

### 1.  The Settlement Class

The proposed Settlement Class sought to be certified for purposes of settlement is defined as follows:

> All individuals who are a member of the Exposure Class or the Non-Exposure Class.  The Settlement Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.  PTHC represents that the Settlement Class contains approximately 753,107 individuals who received notice from PTHC of the Data Breach.
>
> "Exposure Class" means all individuals who received notice of the security breach that PTHC announced on or around March 24, 2021 and whose personally identifiable information or protected health information was potentially exposed in the security breach.  The Exposure Class specifically excludes: (i) PTHC and its officers and

directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

"Non-Exposure Class" means all individuals who received notice from Defendant of the security breach that Defendant announced on or around March 24, 2021 and whose personally identifiable information or protected health information was not potentially exposed in the security breach.   The Non-Exposure Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

S.A. ¶¶ 1.12, 1.17, 1.31.

## 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- For Exposure Class Members, reimbursement for documented Out-of-Pocket Losses and Attested Time up to $7,500.00 per Exposure Class Member, including attested-to lost time spent to address the repercussions of the Data Breach at a rate of $25.00 per hour for up to 3 hours;

- For Non-Exposure Class Members, reimbursement for documented Out-of-Pocket Losses and Attested Time up to $125.00 per Non-Exposure Class Member, including attested-to lost time spent to address the repercussions of the Data Breach at a rate of $25.00 per hour for up to 3 hours;

- For Exposure Class Members, two years of Identity Defense Total Service under the settlement that will include a minimum of the following features: (1) dark web scanning with immediate user notification if potentially unauthorized use of a class member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents.

5

S.A. ¶¶ 2.1, 2.2, 2.5.

The Identity Defense Total Services provided under the Settlement are robust and important.

Defendant has also taken and agrees to continue for 36 months an adjustment to its internal controls and systems to further secure its PHI and PII ("Business Practice Commitments"), including:

- PTHC re-trained its staff about cybersecurity, in general, and phishing attempts, in particular;

- passwords for all systems were changed and password requirements strengthened;

- geolocation restrictions were reviewed and hardened;

- PTHC implemented Microsoft Office 365 with multifactor authentication through Azure;

- Rapid7 intrusion detection was installed on all PCs with 24/7 monitoring through a security operations center (SOC);

- PTHC installed CrowdStrike Endpoint detection on all servers with 24/7 monitoring through SOC;

- PTHC implemented routine ongoing phishing testing through KnowBe4;

- PTHC adopted a learning management system to deliver threat awareness instruction;

- PTHC engaged vCISO through a third-party vendor to review and advise on governance, risk, compliance frameworks, and security hardening;

- PTHC required multi-factor authentication for VPN/remote access and other critical platforms

Actual costs for the implementation and maintenance of the Business Practice Commitments will be paid by PTHC as it is additional consideration for the release described

herein and is separate and apart from the reimbursements paid under S.A. ¶¶ 2.1 and 2.2 and the

Identity Defense Total Service paid for under S.A. ¶ 2.5.

### 3.  Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose Kroll be appointed as Settlement

Administrator. Kroll is a nationally-recognized class action notice and administration firm that has

designed a class notice program for this case, which the parties and Kroll believe is an effective

program.

Subject to Court approval, this Notice Program involves direct notice disseminated via mail

or email to all Settlement Class Members.  S.A. ¶ 3.1.f. The forms of Notice are attached as

Exhibits B and C to the Settlement Agreement. A declaration from Kroll with additional details

about the Notice Program is attached hereto as **Exhibit C** ("Fenwick Decl.").

Finally, Kroll will also establish a settlement website. S.A. ¶ 3.3.  In addition to the Notice,

the website will include information about the Settlement, related case documents, and the

Settlement Agreement. Settlement Class Members will also be able to submit claims

electronically.

Notice of the Settlement will be given to the Settlement Class no later than sixty (60) days

from the date of the Court's Preliminary Approval Order. *Id.*

The Notice informs Settlement Class Members of the nature of the Action, the litigation

background, the terms of the agreement, the relief provided, Proposed Class Counsel's request for

fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on

Class Members. The Notice also describes the procedure for objecting to the Settlement; advises

Settlement Class Members that they have the right to opt out and describes the consequences of

opting out; and will state the date and time of the final approval hearing (subject to this Court's

scheduling), advising that the date may change and how to check the settlement website.

Plaintiff is informed that all costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ IV.2.7 are expected to be approximately $500,000. Fenwick Decl. ¶ 17.

### 4. Exclusion and Objection Procedures

The proposed Notice advises Settlement Class Members of their rights to object or opt out of the Settlement and directs Settlement Class Members to the settlement website for more information. The Notice provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Notice also provides instructions for Settlement Class Members to object to the Settlement and/or to Plaintiff's Counsel's application for attorneys' fees, costs, and expenses. S.A. ¶¶ 5.1, 5.2.

### 5. Attorneys' Fees, Costs, and Expenses

Proposed Class Counsel has agreed to request, and PTHC has agreed to pay, subject to Court approval, an amount not to exceed $510,000.00 for attorneys' fees, costs, and expenses. S.A. ¶ 7.2. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Yanchunis Decl. ¶ 19.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

any and all injuries, losses, damages, costs, expenses, compensation, claims, suits, rights, rights of set-off and recoupment, demands, actions, obligations, causes of action, and liabilities of any and every kind, nature, type, description, or character, whether known or unknown, contingent or vested, in law or in equity, based on direct or vicarious liability, and regardless of legal theory, of Representative Plaintiff or any Settlement Class Member that were or could have been asserted (whether individually or on a class-wide basis) based on, relating to, concerning or arising out of the Data Breach and alleged theft or misuse of PTHC's customers',

patients', prospective customers or patients', employees', or other individuals' PII or PHI, or the allegations, facts, or circumstances related to the Data Breach as described in the Litigation

S.A. ¶¶ 1.27, 6.1.

## III. ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 28 (2d Cir. 2003) (Newman, J., concurring) (collecting cases).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

#### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

##### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[I]n assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 207 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). Courts require only that plaintiffs provide "show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collectco, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (citation omitted).

Here, PTHC sent notice of the Data Breach to approximately 753,107 individuals.  S.A. ¶ 1.31. Thus, numerosity is easily satisfied.

### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted).  "The Commonality Requirement has been characterized as a 'low hurdle.'" *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510 (S.D.N.Y. 2018) (citation omitted).  "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Breach. Specifically, Plaintiff alleged, among others, the following common questions:

a. Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

b. Whether Defendant had duties not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had duties not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

(Compl. ¶ 75). Such issues, focusing on Defendant's conduct, satisfy commonality.

### c. Typicality.

The next prerequisite to certification, typicality, is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation

omitted).  "Typicality does not require that the facts underlying each class member's claims be identical." *Id.* (citation omitted).  "It merely demands that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.* (citation and internal quotation marks omitted).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Breach. They are also based on the same legal theory, *i.e.*, that Defendant had legal duties to protect Plaintiff's and Settlement Class Members' PII and PHI. Because Plaintiff's and Settlement Class Members' claims arise from the same course of events and they make similar legal arguments to prove Defendant's liability, typicality is met. *Hines*, 334 F.3d at 1256.

### d.   Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. He authorized PTHC or its subsidiary to collect and retain his PII and PHI and alleges it was compromised by the Data Breach, as the PII and PHI of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, Proposed Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Yanchunis Decl., ¶¶ 3–12, and its Composite Exh. 1. Because Plaintiff and his counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

**2. The Predominance and Superiority Requirements of Are Met.**

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b).  Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Austen v. Catterton Partners V, LP*, 268 F.R.D. 146 (D. Conn. 2010) (citation omitted).  "In determining whether common questions of law and fact predominate, the inquiry is directed primarily toward whether the issue of liability is common to all members of the class." *Id.* (citation omitted).  The Settlement Class readily meets these requirements.

**a. Predominance.**

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. "[W]hen determining whether common issues predominate, courts focus on the liability issue ... and if the liability issue is common to the class, common questions [predominate over individual

ones]." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372–73 (S.D.N.Y. 2007).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Id.* (citation omitted).

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiff's PII and PHI, like that of every other Settlement Class Member—can be established through generalized evidence. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had duties to exercise reasonable care in safeguarding, securing, and protecting their PII and PHI and whether Defendant breached those duties. The many common questions that arise from Defendant's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate. Because the claims are being certified for settlement purposes, there are no manageability issues.

### b.  Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class.  "The Supreme Court has recognized that absent a class action, small claimants individually may lack the economic resources to vigorously litigate their rights."  *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 VM, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) (citing *Eisen v. Carlisle & Jacqueline*, 417 U.S.

156, 161 (1974)).  Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.  Fed. R. Civ. P. 23(b)(3).  "[M]anageability is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (citation omitted).

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action. Additionally, the Settlement will give the parties the benefit of finality.

**B.  Plaintiff's Counsel Should Be Appointed as Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4)

resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis' Declaration, Proposed Class Counsel has extensive experience prosecuting similar class actions, as well as other complex litigation, and has the experience to assess the risk of continued litigation and appeals. Proposed Class Counsel diligently investigated and prosecuted the claims here, dedicated substantive resources to the litigation of those claims, and successfully negotiated the Settlement to the benefit of Plaintiff and the Settlement Class. Accordingly, the Court should appoint John A. Yanchunis and Ryan D. Maxey as Class Counsel.

**C.  The Settlement Is Fair, Reasonable, and Adequate.**

After determining that certification is appropriate, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. Thus, while district courts have discretion in deciding whether to approve a proposed settlement, "[t]he court must give proper deference to the private consensual decision of the parties in exercising its discretion." *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016).

**1.  The Settlement Satisfies Amended Rule 23(e)**

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes.   As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule

23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a.  Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Andrew Nadolna. Yanchunis Decl. ¶ 16. Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b.  Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded.  Plaintiff's claims would still need to succeed against a motion to dismiss, should the Court grant leave to file one, *see* (Doc. 11 and 12), and on a motion for class certification, and survive an appeal thereof.

Pursuant to the Settlement, PTHC will pay up to $3,000,000.00 as an aggregate cap for, among other things: (i) valid and approved claims made by members of the Exposure Class under S.A. ¶ 2.1, (ii) valid and approved claims made by members of the Non-Exposure Class under S.A. ¶ 2.2, and (iii) settlement administration fees under S.A. ¶ 3.6.  Each Exposure Class Members who submits a valid and approved claim may obtain reimbursement for documented Out-of-Pocket Losses and Attested Time up to $7,500.00 per Exposure Class Member, including attested-to lost time spent to address the repercussions of the Data Breach at a rate of $25.00 per hour for up to 3 hours.  Each Non-Exposure Class Members who submits a valid and approved claim may obtain reimbursement for documented Out-of-Pocket Losses and Attested Time up to $125.00 per Exposure Class Member, including attested-to lost time spent to address the repercussions of the Data Breach at a rate of $25.00 per hour for up to 3 hours.  Finally, each Exposure Class Member may enroll in two years of Identity Defense Total Services under the settlement that will include a minimum of the following features: (1) dark web scanning with immediate user notification if potentially unauthorized use of a class member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents.  Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are attacks on the substantive claims Plaintiff has alleged. *See* PTHC's letter to the Court requesting a pre-motion conference regarding its anticipated motion to dismiss the Class Action Complaint and Plaintiff's response thereto (Doc. 11 and 12). Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations and made clear

that they would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form.  Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. S.A. ¶ 8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on Class relief. Yanchunis Decl. ¶ 19. Proposed Class Counsel will request an amount not to exceed $510,000.00 for attorneys' fees, costs, and expenses, S.A. ¶ 7.2, and move the Court for a service award payment not to exceed $2,500.00 for Plaintiff. S.A. ¶ 7.3.  PTHC shall pay the Court-approved amount of attorney's fees and litigation costs to Proposed Class Counsel and the Court-approved service award to Representative Plaintiff, subject to the negotiated caps, within ten (10) days after the Effective Date.  S.A. ¶ 7.4.

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of Rule 23(e)(2) is therefore met.

### c.  The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a valid and approved claim and  Exposure Class Members are eligible to enroll in two years of Identity Defense Total Services. Yanchunis Decl. ¶ 27.

### 2.  The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process.  ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39

(4th ed. 2002). "[P]reliminary approval should be granted where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Dover v. Brit. Airways, PLC (UK)*, 323 F. Supp. 3d 338 (E.D.N.Y. 2018) (citation omitted).

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

### D. The Proposed Class Notice Satisfies Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "The notice must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297 (W.D.N.Y. 2016) (citations omitted).

20

The Notice program here satisfies all of these criteria and is designed to provide the best notice practicable. The Notice is reasonably calculated to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Proposed Class Counsel's request for attorney's fees, costs, and expenses, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). The Notice program is comprised of: (1) direct Notice sent by mail or email; and (2) Notice posted to the settlement website. S.A. ¶¶ 1.19, 3.1(f), 3.3.

The proposed claim form, S.A. Exhibit A, satisfies all of the above criteria. Finally, Defendant shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).  S.A. ¶ 9.

Therefore, the Notice and Notice Program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notice, Notice Program, and the form and content of the claim form and Notice.

### E.  The Court Should Schedule a Final Approval Hearing.

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Proposed Class Counsel's request for the Fee Award and Costs. Plaintiff requests that the Court schedule the Final Approval Hearing at a date convenient for the Court, no earlier than: (i) 100 days after Defendant notifies the appropriate government officials pursuant to CAFA or (ii) 60 days after the Claims Deadline, whichever is later.  Class Counsel will file the motion for Final Approval no later than 21 days prior to the hearing.

## IV. CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Michael Everetts as Settlement Class representative; (4) appointing John A. Yanchunis and Ryan D. Maxey as Class Counsel; (5) approving the proposed Notice Program and authorizing its dissemination; (6) appointing Kroll as the Settlement Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process.

Dated:  May 5, 2023                                Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN D. MAXEY
rmaxey@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

***Attorneys for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 5, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ John A. Yanchunis*

23