# Exhibit A

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

MICHAEL EVERETTS,

on behalf of himself and all others
similarly situated,

      Plaintiff,

v.

PERSONAL TOUCH HOLDING CORP.,
a Delaware corporation,

      Defendant.

Case No.: 2:21-cv-02061 (JMA) (ARL)

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated April 12, 2023, is made and entered into by and among: (1) Plaintiff Michael Everetts ("Plaintiff" or "Representative Plaintiff"), individually and on behalf of the Settlement Class Members (as defined below); and (2) Defendant Personal Touch Holding Corp. ("PTHC") (collectively, the "Parties").

## I.     BACKGROUND

1.     PTHC, through its subsidiaries, provides home health and home care personnel and related services to individuals in their homes.

2.     In or about January 2021, PTHC suffered a cyber-security attack on its private cloud hosted by its managed service providers (the "Data Breach"). During the Data Breach, an unauthorized person may have accessed private cloud business records of PTHC and its direct and indirect subsidiaries, including medical treatment information, insurance card and health plan benefit numbers, medical record numbers, first and last name, address, telephone numbers, date of birth, Social Security numbers, and financial information, including check copies, credit card numbers, and bank account information.

1

3.      After PTHC provided notice of the Data Breach on or about March 24, 2021, Plaintiff filed a putative Class Action Complaint on April 15, 2021 in the United States District Court for the Eastern District of New York.

4.      In his Complaint, Plaintiff asserted claims against PTHC for negligence, breach of implied contract, invasion of privacy, and breach of confidence.

5.      PTHC timely filed a letter requesting a pre-motion conference regarding its anticipated motion to dismiss the Class Action Complaint and Plaintiff filed a response. Prior to the Court ruling on the request, the Court stayed the entry of a scheduling order, stayed discovery, stayed motion practice, and directed the parties to attend mediation, in an effort to explore the possibility of settling the claims of Plaintiff and the putative class. On February 24, 2022, the parties participated in a full-day in-person mediation facilitated by an experienced JAMS mediator, Andrew Nadolna, who has over 25 years of experience in mediation. On June 2, 2022, the parties conducted a second session with Mr. Nadolna. Over the ensuing months, the parties continued to negotiate the terms of a potential settlement. After coming to an agreement in principle, the parties finalized the terms of this Settlement Agreement and the attached exhibits.

6.      Pursuant to the terms set out below, this Settlement Agreement provides for the full and final resolution, discharge and settlement of all claims and causes of action asserted, or that could have been asserted, against PTHC and the Released Persons (as defined below) arising out of or relating to the Data Breach, by and on behalf of the Representative Plaintiff and Settlement Class Members (as defined below) and any other such actions by and on behalf of any other persons in the United States relating to the Data Breach. The settlement contemplated by this Settlement Agreement is subject to preliminary and final approval by the Court.

## II.    REPRESENTATIVE PLAINTIFF'S CLAIMS AND BENEFITS OF SETTLING

Representative Plaintiff believes the claims asserted in the Litigation (as defined below), as set forth in the Complaint, have merit. Representative Plaintiff, and his counsel who are proposed as

2

Class Counsel ("Proposed Class Counsel") recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the litigation against PTHC through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Class Counsel are experienced in class action litigation and are very knowledgeable regarding the relevant claims, remedies, and issues generally in such litigation and in the privacy issues specific to this litigation. They have determined that the settlement set forth in this Settlement Agreement, which provides compensation for those individuals who suffered the consequences of the Data Breach, is fair, reasonable, and adequate, and in the best interest of Representative Plaintiff and the Settlement Class.

### III.    DENIAL OF WRONGDOING AND LIABILITY

PTHC denies all of the material contentions and claims alleged against it in the Litigation, and all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation.  PTHC specifically denies that Representative Plaintiff and the Settlement Class Members are entitled to any relief from PTHC.  PTHC further asserts that neither the Representative Plaintiff nor the Settlement Class Members have suffered harm and that the complications of managing a potential trial in this matter would preclude class certification in the absence of settlement.   Nonetheless, without making any admission of wrongdoing whatsoever, PTHC has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.  PTHC has also considered the uncertainty and risks inherent in any litigation.  PTHC has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.   SETTLEMENT TERMS

**NOW, THEREFORE**, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among the Plaintiff's Representative, individually and on behalf of the Settlement Class Members, and PTHC that, subject to the approval of the Court, the Litigation be forever resolved, settled, compromised, and dismissed with prejudice on the following terms and conditions:

1. <u>**Definitions**</u>

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1.    "Agreement" or "Settlement Agreement" means this agreement.

1.2.    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3.    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4.    "Claims Administrator" means Kroll, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data security incident litigation, subject to approval by the Court.

1.5.    "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.4; which shall be 90 days from the start of the Notice Program under ¶ 3.2, pursuant to ¶ 2.3.

1.6.    "Claim Form" means the form that the Settlement Class Member must complete and submit on or before the Claim Deadline in order to be eligible for the benefits described herein. The Claim Form shall require a sworn signature or electronic verification under penalty of perjury but shall not require a notarization. The Claim Form template is attached as Exhibit A to this Settlement Agreement.

1.7.    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.8.    "Court" means the United States District Court for the Eastern District of New York.

1.9.    "Data Breach" means the data breach suffered by PTHC as a result of a cyber-security attack on its private cloud hosted by its managed service providers on or about January 20, 2021 during which an unauthorized Person may have accessed private cloud business records of PTHC and its direct and indirect subsidiaries, including medical treatment information, insurance card and health plan benefit numbers, medical record numbers, first and last name, address, telephone numbers, date of birth, Social Security numbers, and financial information, including check copies, credit card numbers, and bank account information (collectively, the "PII" and "PHI").

1.10.   "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.11.   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.14 and ¶ 9.1 herein have occurred and been met.

1.12.   "Exposure Class" means all individuals who received notice of the security breach that PTHC announced on or around March 24, 2021 and whose personally identifiable information or protected health information was potentially exposed in the security breach.  The Exposure Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

1.13.   "Exposure Class Member(s)" means a Person(s) who falls within the definition of the Exposure Class.

1.14.   "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that

5

term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.  Notwithstanding the above, any order modifying or reversing any attorney's fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.15.    "Judgment" means a judgment rendered by the Court.

1.16.    "Litigation" means *Michael Everetts v. Personal Touch Holding Corp.*, Case No. 2:21-cv-02061 (JMA) (ARL), pending in the United States District Court for the Eastern District of New York.

1.17.    "Non-Exposure Class" means all individuals who received notice from Defendant of the security breach that Defendant announced on or around March 24, 2021 and whose personally identifiable information or protected health information was not potentially exposed in the security breach.  The Non-Exposure Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

1.18.    "Non-Exposure Class Member(s)" means a Person(s) who falls within the definition of the Non-Exposure Class.

1.19.    "Notice" means the written notice to be sent to the Settlement Class Members pursuant to the Preliminary Approval Order.

1.20.    "Notice Program" means the Claim notice program as explained in ¶ 3.2 herein.

1.21.    "Objection Date" means the date by which objections to the settlement from Settlement Class Members must be filed with the Clerk of Court in order to be effective and timely.

1.22.    "Opt-Out Date" means the date by which requests for exclusion from settlement must be postmarked in order to be effective and timely.

1.23.    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.24.    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing mailed notice to the Settlement Class of the pendency of the Litigation and of the Settlement, to be entered by the Court.

1.25.    "Plaintiff's Counsel" and "Proposed Class Counsel" mean John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan Complex Litigation Group.

1.26.    "Related Entities" means PTHC's past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint ventures, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers, and reinsurers, past, present, and future, and all persons acting under, by or though, or in concert with any of them, other than any individual who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Breach or who pleads nolo contendere to any such charge.

1.27.   "Released Claims" shall collectively mean any and all injuries, losses, damages, costs, expenses, compensation, claims, suits, rights, rights of set-off and recoupment, demands, actions, obligations, causes of action, and liabilities of any and every kind, nature, type, description, or character, whether known or unknown, contingent or vested, in law or in equity, based on direct or vicarious liability, and regardless of legal theory, of Representative Plaintiff or any Settlement Class Member that were or could have been asserted (whether individually or on a class-wide basis) based on, relating to, concerning or arising out of the Data Breach and alleged theft or misuse of PTHC's customers', patients', prospective customers or patients', employees', or other individuals' PII or PHI, or the allegations, facts, or circumstances related to the Data Breach as described in the Litigation including, without limitation, any violations of New York and similar state consumer protection statutes; any violation of the California Customer Records Act, California Consumer Privacy Act, California Unfair Competition Law, California Consumers Legal Remedies Act, Confidentiality of Medical Information Act; New York General Business Law; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; any federal, state or local statutory or regulatory claims, including but not limited to, the consumer protection laws and unfair and deceptive trade practice laws or other common laws or statues of all fifty (50) states, U.S. territories, and the United States; and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorney's fees and litigation costs, expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by Representative Plaintiff or any Settlement Class Member against any of the Released Persons based on, relating to, concerning or

8

arising out of the Data Breach and alleged theft or misuse of PTHC's customers', patients', prospective customers or patients', employees', or other individuals' PII or PHI or the allegations, facts, or circumstances related to the Data Breach.  Released Claims shall include Unknown Claims as defined in ¶ 1.33.  Released Claims shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.  The Released Claims shall be accorded the broadest preclusive scope and effect permitted by law against the Settlement Class Members and this definition of Released Claim is a material term of this Settlement Agreement.

1.28.   "Released Persons" means PTHC, the Related Entities and each of their past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint venturers, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers, and reinsurers, past, present, and future, and all persons acting under, by or though, or in concert with any of them.

1.29.   "Representative Plaintiff" means plaintiff Michael Everetts.

1.30.   "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.31.   "Settlement Class" means all individuals who are a member of the Exposure Class or the Non-Exposure Class.  The Settlement Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal

activity involved in the Data Breach or who pleads nolo contendere to any such charge.  PTHC represents that the Settlement Class contains approximately 753,107 individuals who received notice from PTHC of the Data Breach.

1.32.   "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.33.   "Settling Parties" means, collectively, PTHC and Representative Plaintiff, individually and on behalf of the Settlement Class.

1.34.   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including the Representative Plaintiff, does not know or suspect to exist as of the date of the entry of the Preliminary Approval Order that, if known by any of them, might have affected their settlement with, and release of, the Released Persons, or might have affected their decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiff expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Representative Plaintiff, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe

to be true with respect to the subject matter of the Released Claims, but Representative Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims.  The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

    1.35.   "United States" as used in this Settlement Agreement includes the District of Columbia and all territories of the United States.

## 2.  <u>Settlement Benefits</u>

    2.1.   <u>Reimbursement for Out-of-Pocket Losses and Attested Time for the Exposure Class</u>. All Exposure Class Members who submit a valid claim using the Claim Form (Exhibit A to this Settlement Agreement) are eligible to receive reimbursement for documented Out-of-Pocket Losses and Attested Time up to $7,500 per Exposure Class Member.

        2.1.1.   "Out-of-Pocket Losses" for Exposure Class Members are unreimbursed costs or expenditures incurred by Exposure Class Members that are fairly traceable to the security breach. Out-of-Pocket Losses may include the following: (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (2) other miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, bank, and long-distance telephone charges; (3) credit monitoring or other mitigative costs that were incurred on or after January 20, 2021 (or the earliest verifiable date the security breach occurred) through the date of the class member's claim submission; and (4) unpaid time off work to address issues fairly traceable to the security breach at the actual hourly rate of that class member.

        2.1.2.   Members of the Exposure Class who elect to submit a claim for reimbursement of Out-of- Pocket Losses must provide to the Settlement Administrator the information required to

11

evaluate the claim, including: (1) the class member's name and current address; (2) documentation supporting their claim; and (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Documentation supporting Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the class member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

2.1.3.   Out-of-Pocket Losses will be deemed "fairly traceable" if (1) the timing of the loss occurred on or about January 20, 2021 (or the earliest verifiable date the security breach occurred); and (2) the personal information used to commit identity theft or fraud consisted of the same type of personal information that was provided to Defendant prior to the security breach.

2.1.4.   Members of the Exposure Class with Out-of-Pocket Losses may also submit a claim for up to three (3) hours of time spent remedying issues related to the security breach at Twenty Five Dollars ($25) per hour by providing an attestation and a brief description of (1) the actions taken in response to the security breach and (2) the time associated with each action ("Attested Time"). Members of the Exposure Class cannot duplicate claims for Attested Time with claims for Out-of-Pocket Losses based on unpaid time off work.

2.2.   <u>Reimbursement for Out-of-Pocket Losses and Attested Time for the Non-Exposure Class.</u>  All Non-Exposure Class Members who submit a valid claim using the Claim Form (Exhibit A to this Settlement Agreement) are eligible to receive reimbursement for documented Out-of-Pocket Losses and Attested Time.

2.2.1.   "Out-of-Pocket Losses" for Non-Exposure Class Members are unreimbursed costs or expenditures up to a cap of One Hundred Twenty Five Dollars ($125) per Non-Exposure Class Member incurred by Non-Exposure Class Members that are fairly traceable to receipt of notice from Defendant of the security breach. Out-of-Pocket Losses may include the following: (1)

miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (2) credit monitoring or other mitigative costs that were incurred on or after January 20, 2021 (or the earliest verifiable date of receipt of notice from Defendant of the security breach) through the date of the class member's claim submission.

2.2.2. Members of the Non-Exposure Class who elect to submit a claim for reimbursement of Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the class member's name and current address; (2) documentation supporting their claim; and (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Documentation supporting Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the class member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

2.2.3. Out-of-Pocket Losses will be deemed "fairly traceable" if the timing of the loss occurred on or after January 20, 2021 (or the earliest verifiable date of receipt of notice from Defendant of the security breach).

2.2.4. Members of the Non-Exposure Class with Out-of-Pocket Losses may also submit a claim for up to three (3) hours of time spent remedying issues related to the receipt of notice from Defendant of the security breach at Twenty Five Dollars ($25) per hour by providing an attestation and a brief description of (1) the actions taken in response to the receipt of notice from Defendant of the security breach and (2) the time associated with each action ("Attested Time").

2.3.   Aggregate Cap for Out-of-Pocket Losses, Attested Time, and Settlement Administration Fees.  PTHC will pay valid and approved claims made under ¶¶ 2.1 and 2.2 and settlement administration fees under ¶ 3.6, subject to an aggregate cap of Three Million Dollars ($3,000,000.00), but exclusive of Identity Defense Total Service, any service award, and any

13

attorney's fees and litigation costs, which PTHC shall pay separately.  If the total claims under ¶¶ 2.1 and 2.2 and the settlement administration fees exceed the aggregate cap, all claims will be reduced *pro rata*. Additionally, Settlement Class Members seeking reimbursement under ¶¶ 2.1 or 2.2 must complete and submit a written Claim Form to the Claims Administrator, postmarked on or before the 90th day after the deadline for the completion of Notice to Settlement Class Members as set forth in ¶ 3.2 (the "Claims Deadline").  The Notice to the class will specify this deadline and other relevant dates described herein.

2.4.    <u>The Claim Form.</u>

2.4.1.  The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct to the best of his or her knowledge and belief and is being made under penalty of perjury.  Notarization shall not be required.  The Settlement Class Member must reasonably attest that the out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Data Breach.  Failure to provide supporting attestation and documentation as requested on the Claim Form and required under ¶¶ 2.1 or 2.2 shall result in denial of a claim.  Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.7.

2.4.2.  Claimants seeking reimbursement under ¶¶ 2.1 or 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses. Claimants must provide the Claims Administrator with sufficient information to evaluate the claim, including (1) the class member's name and current address; (2) documentation supporting their claim; and (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Documentation supporting out-of-pocket losses can include receipts or other documentation not "self-prepared" by the class member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by

themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

2.4.3. Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.

2.4.4. To be valid, claims must be complete and submitted to the Claims Administrator on or before the Claims Deadline.

2.4.5. No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.5. <u>Identity Defense Total Service.</u> Exposure Class Members can elect to enroll in two years of Identity Defense Total Service under the settlement that will include a minimum of the following features: (1) dark web scanning with immediate user notification if potentially unauthorized use of a class member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents ("Identity Defense Total Services"). The costs for such services will be negotiated with the provider on a per-head basis and will be paid by PTHC separate and apart from the reimbursements paid under ¶¶ 2.1 and 2.2, subject to an aggregate cap of Sixty-Seven Thousand Dollars ($67,000.00). Identity Defense Total Service is available to all Exposure Class Members regardless of whether they submit a claim under ¶¶ 2.1.

2.6. <u>Remedial Measures/Security Enhancements.</u>  Defendant has taken and agrees to continue for 36 month an adjustment to its internal controls and systems to further secure its PHI and PII ("Business Practice Commitments"), including:

- PTHC re-trained its staff about cybersecurity, in general, and phishing attempts, in particular;

- passwords for all systems were changed and password requirements strengthened;

- geolocation restrictions were reviewed and hardened;

- PTHC implemented Microsoft Office 365 with multifactor authentication through Azure;

- Rapid7 intrusion detection was installed on all PCs with 24/7 monitoring through a security operations center (SOC);

- PTHC installed CrowdStrike Endpoint detection on all servers with 24/7 monitoring through SOC;

- PTHC implemented routine ongoing phishing testing through KnowBe4;

- PTHC adopted a learning management system to deliver threat awareness instruction;

- PTHC engaged vCISO through a third-party vendor to review and advise on governance, risk, compliance frameworks, and security hardening;

- PTHC required multi-factor authentication for VPN/remote access and other critical platforms

Actual costs for the implementation and maintenance of the Business Practice Commitments will be paid by PTHC as it is additional consideration for the release described herein and is separate and apart from the reimbursements paid under ¶¶ 2.1 and 2.2 and the Identity Defense Total Service paid for under ¶ 2.5.

2.7.    <u>Dispute Resolution for Claims.</u>

2.7.1. The Claims Administrator will determine whether: (1) the claimant is an Exposure Class Member or Non-Exposure Class Member based on information to be provided to the Claims Administrator by PTHC's counsel; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to support the claimant's class membership and the expenses described in ¶¶ 2.1 and 2.2; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Breach (collectively, "Facially Valid").  The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, e.g., documentation requested on the Claim Form, information regarding the claimed losses, available

16

insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

2.7.2. Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant thirty (30) days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than six months from the Effective Date. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.7.3. Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Claims Administrator shall reject the claim without any further action.

2.7.4. Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.

2.7.5.  The Claims Administrator shall provide the Settling Parties' counsel with a summary of Facially Valid Claims on a monthly basis, stating the name of the Settlement Class Member, the approved Claim amount, and a description of the support provided for such Claim. Within fifteen (15) days after receiving such summary, one or more of the Settling Parties may object to any Claim and instruct the Claims Administrator to withhold approval of said Facially Valid Claim so that the objecting party may seek review of said Claim by a third-party Settlement Referee agreed upon by the Parties or appointed by the Court if no such agreement is reached.  PTHC shall not be responsible for paying any objected to claim unless and until said objection is resolved by the Settlement Referee.

2.8.    Settlement Expenses.  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.7, shall be paid by PTHC subject to the aggregate cap provided under ¶ 2.3.

2.9.    Settlement Class Certification.   The Settling Parties agree, for purposes of this settlement only, to the certification of the Exposure Class and the Non-Exposure Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Exposure Class and Non-Exposure Class provided for herein, will be vacated and the Litigation shall proceed as though the Exposure Class and Non-Exposure Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.  The Settling Parties' agreement to the certification of the Exposure Class and Non-Exposure Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.10.   <u>Confidentiality of Information Submitted by Settlement Class Members.</u> Information submitted by Settlement Class Members pursuant to this Settlement Agreement shall be deemed confidential and protected as such by PTHC and the Claims Administrator.

**3.   <u>Order of Preliminary Approval and Publishing of Notice of Fairness Hearing</u>**

3.1.   As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel shall submit this Settlement Agreement to the Court as part of an unopposed motion for preliminary approval of the Settlement Agreement.  The motion for preliminary approval shall request entry of a Preliminary Approval Order in the form attached hereto as **Exhibit D** or an order substantially similar, requesting, *inter alia*:

a)   conditional certification of the Exposure Class and Non-Exposure Class for settlement purposes only pursuant to ¶ 2.9;

b)   preliminary approval of the Settlement Agreement as set forth herein;

c)   the scheduling of a Final Fairness Hearing and briefing schedule for Motion For Final Hearing and Application for Class Representative Service Award and Attorney's Fees and Litigation Costs;

d)   appointment of Proposed Class Counsel as Class Counsel;

e)   appointment of Representative Plaintiff as Class Representative;

f)   approval of a customary form of short notice to be mailed or emailed to Settlement Class Members ("Short-Form Notice") in a form substantially similar to the one attached hereto as **Exhibit B** and a customary long form notice ("Long-Form Notice") in a form substantially similar to the one attached hereto as **Exhibit C** which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g)   appointment of a Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties; and

h)   approval of a claim form substantially similar to that attached hereto as **Exhibit A**.

The Notice and Claim Form shall be reviewed by the Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2.     Within 30 days of an order directing class notice, Defendant will (i) provide to the Claims Administrator a class list that includes Settlement Class Members' full names, current addresses, email addresses, and last known phone numbers, where known and/or as reflected in PTHC's records and (ii) pay to the Claims Administrator the funds necessary to pay for the printing costs and costs of mailing. Notice shall be provided to class members in accordance with the Notice plan set forth in the Motion for Preliminary Approval.

3.3.     The Notice plan shall be subject to approval by the Court as meeting constitutional due process requirements.  The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the Notice and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with an interactive voice response system shall be made available to address Settlement Class Members' inquiries.  The Claims Administrator also will provide copies of the forms of the Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.  Prior to the Final Fairness Hearing, Proposed Class Counsel and/or PTHC's counsel shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of Notice. The Notice and Claim Form approved by the Court may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval.

3.4.     Within ten (10) days of the filing of the Motion for Preliminary Approval, PTHC shall provide notice to state Attorneys General or others as required by 28 U.S.C. § 1715(b).

3.5.     The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.6.     PTHC shall pay for all of the costs associated with the Claims Administrator, and for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, as well as the costs of such notice, all subject to the aggregate cap provided under ¶ 2.3.

3.7.     Proposed Class Counsel and PTHC's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

## 4.  Opt-Out Procedures

4.1.     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  Persons wishing to opt-out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked no later than ninety (90) days after the date on which the Notice Program commences  pursuant  to  ¶  3.2.    All  opt-out  requests  sent  to  anyone  other  than  the  Claims Administrator, including requests previously sent to Proposed Class Counsel and/or PTHC's counsel, are ineffectual and shall be deemed null and void.

4.2.     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3.     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Class Counsel and PTHC's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").  The Parties will have the same right to seek discovery from any

objecting Settlement Class Member as they would if the objector was a party in the Litigation, including the right to take the objector's deposition. Such discovery will be conducted on an expedited basis, and the objecting Settlement Class Member is required to respond to any written discovery within fourteen (14) days and must appear for deposition within fourteen (14) days after a deposition is noticed.  No later than 10 days prior to the Final Approval Hearing, Class Counsel shall file this list of Opt-Out members with the Court for purposes of being attached to the Judgment to be entered upon Final approval.

4.4.    In the event that there have been more Opt-Outs (persons who wish to be excluded) than listed in a separate letter agreement (to be shared with the Court under seal, if requested), PTHC may, by notifying Proposed Class Counsel in writing within five (5) days of receiving the Opt-Out List from the Settlement Administrator, void this Settlement Agreement. If PTHC voids this Settlement Agreement pursuant to this paragraph, PTHC shall be obligated to pay all settlement expenses already incurred, subject to the aggregate cap provided under ¶ 2.3, excluding any attorney's fees and litigation costs of Proposed Class Counsel and any service award.

## 5. <u>Objection Procedures</u>

5.1.    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date.  Such notice shall state: (i) the name or caption of this Litigation; (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney

or other duly authorized representative (along with documentation setting forth such representation). To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court for the United States District Court for the Eastern District of New York no later than ninety (90) days from the date on which the Notice Program commences pursuant to ¶ 3.2 and served concurrently therewith upon Proposed Class Counsel and counsel for PTHC via the Court's electronic filing system.

5.2.    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.  Release**

6.1.    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged PTHC, the Released Entities and the Released Persons from all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each  Settlement Class Member, including Representative Plaintiff, shall, either directly, indirectly, representatively, on their own behalf or on behalf of any class or other person or entity, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action, regulatory action, arbitration, or court or other proceeding in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim is asserted.

**7.   Proposed Class Counsel's Attorney's Fee and Litigation Costs; Service Award to Representative Plaintiff**

7.1.    The Settling Parties did not discuss the payment of attorney's fees and litigation costs and/or a service award to Representative Plaintiff, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that PTHC would pay reasonable attorney's fees and litigation costs and a service award to Representative Plaintiff as may be agreed to by PTHC and Proposed Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.   PTHC and Proposed Class Counsel have agreed to the following:

7.2.    Defendant agrees not to oppose an application by Plaintiff's counsel on an award of attorneys' fees and litigation costs not to exceed Five Hundred Ten Thousand Dollars ($510,000.00), subject to Court approval.  Defendant shall pay the attorneys' fee award approved by the Court up to the agreed maximum in addition to any benefits provided to Settlement Class members and the cost of settlement administration.

7.3.    The Representative Plaintiff shall seek and Defendant agrees to pay a service award not to exceed Two Thousand Five Hundred Dollars ($2,500.00), subject to Court approval. This service award shall be separate and apart from any other sums agreed under this Settlement Term Sheet and the request for a service award is not a condition to the Representative Plaintiff's approval of this Settlement.

7.4.    PTHC shall pay the Court-approved amount of attorney's fees and litigation costs to Proposed Class Counsel and the Court-approved service award to Representative Plaintiff within ten (10) days after the Effective Date.  Proposed Class Counsel shall provide payment instructions and a completed W-9 Form prior to the deadline for these payments and PTHC shall issue an IRS Form 1099-MISC to Representative Plaintiff solely for the amount awarded by the Court for the Representative Plaintiff's service award.   Neither Class Counsel nor counsel for PTHC intend

anything contained herein to constitute legal advice concerning the tax consequences of any amount paid hereunder nor shall it be relied on as such.

7.5.    Proposed Class Counsel shall thereafter distribute the award of attorney's fees and litigation costs to themselves, and the service award to Representative Plaintiff consistent with ¶¶ 7.2 and 7.3.  If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court), PTHC shall have no obligation to pay attorney's fees and litigation costs or a service award and shall only be required to pay costs and expenses related to notice and administration that were already incurred. Under no circumstances will Proposed Class Counsel or any Class Member be liable for any costs or expenses related to notice or administration.

7.6.    The amount(s) of any award of attorney's fees and litigation costs and the service award are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorney's fees and litigation costs and/or any service award ordered by the Court to Proposed Class Counsel or Representative Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

## 8.  Administration of Claims

8.1.    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.  Proposed Class Counsel and PTHC shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge any such claim if they believe it to be inaccurate or inadequate. If the Claims Administrator is unable to make a determination regarding a particular claim, any claims agreed to be paid in full by PTHC shall be deemed valid.  The Claims Administrator's final determination of the validity or invalidity of any claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.7.

8.2.     Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. No approved claims shall be paid until after the Effective Date.  If this Settlement Agreement is terminated or otherwise does not become Final (e.g., disapproval by the Court or any appellate court) prior to the payment of approved claims, PTHC shall have no obligation to pay such claims and shall only be required to pay costs and expenses related to notice and administration that were already incurred.

8.3.     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4.     No Person shall have any claim against the Claims Administrator, PTHC, Proposed Class Counsel, Plaintiff, and/or PTHC's counsel based on distributions of benefits to Settlement Class Members.

8.5.     The Parties, Class Counsel, and PTHC's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Claims Administrator, or any of its respective designees or agents, in connection with the Claims Administration or otherwise; or (ii) the determination, rejection, administration, calculation or payment of any Claims.  The Claims Administrator shall indemnify and hold harmless the Parties, Class Counsel, and PTHC's Counsel for (i) any act or omission or determination of the Claims Administrator, or any of its respective designees or agents, in connection with the Notice Plan and the Claims Administration; and (ii) the determination, rejection, administration, calculation or payment of any Claims.

**9.  Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1.    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      PTHC has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.4;

c)      the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.14.

9.2.    If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.3 unless Proposed Class Counsel and PTHC's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3.    The Parties agree for the purposes of this Settlement Agreement only, to the certification of the Class and the Settlement Class.  In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties respective positions on the issue of class certification or any other issue) and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall be void and have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any statement in this Settlement Agreement to the contrary, including but not limited to ¶ 9.4, no order of the Court or modification or reversal on appeal

of any order reducing the amount of attorney's fees and litigation costs and/or the service award shall constitute grounds for cancellation or termination of the Settlement Agreement. The Parties' agreement to the certification of the Class and the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case or action, as to which all other rights are specifically preserved. Further, notwithstanding any statement in this Settlement Agreement to the contrary, PTHC shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class and Claims Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

9.4.    This Settlement Agreement may be terminated and/or cancelled by any of the Parties if (i) the Court rejects, materially modifies, materially amends, or changes, or declines to preliminarily approve or finally approve the Settlement Agreement apart from the award of attorneys' fees and costs; (ii) an appellate court reverses the Preliminary Approval Oder and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, the Preliminary Approval Order, the proposed Judgment, the Judgment, or the Settlement Agreement, other than the amount of attorneys' fees and costs.

## 10. <u>Non-Disparagement</u>

10.1.    Representative Plaintiff shall not make, publish, or state, or cause to be made, published, or stated, any defamatory or disparaging statement, writing or communication pertaining to PTHC, or its directors, officers, and employees, and/or affiliates, and Related Entities.

## 11. <u>Miscellaneous Provisions</u>

11.1.        The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement

all terms and conditions of this Settlement Agreement, and to exercise their commercially reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2.     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, that it reflects a settlement that was reached voluntarily after consultation with competent legal counsel, and that for the purpose of construing or interpreting this Agreement, the Settling Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Litigation, except as set forth herein.

11.3.   Neither the Settlement Agreement, nor the settlement terms contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, the Agreement along with all related communications and documents exchanged in connection with the Agreement and mediation between the Parties shall be deemed a negotiation for settlement purposes only under Federal Rule of Procedure 408 and will not be admissible in evidence or usable for any purposes whatsoever in the

Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Person. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4.    The terms of this Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approved by the Court; it is provided, however, that after enter of the Preliminary Approval order, the Parties may by written agreement, effect such amendments or modifications of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

11.5.    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs. This agreement supersedes all previous agreements made between Plaintiff and PTHC.

11.6.    Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of

the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

11.7.    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the release contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

11.8.    If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days unless otherwise specified.

11.9.    Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties, through their respective counsel, shall consult with each other in good faith prior to seeking Court intervention.

11.10.    Each counsel or other Person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

11.11.    The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

11.12.    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

11.13.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

31

11.14.   The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the state of New York, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the state of New York.

11.15.   The Final Approval Hearing shall be scheduled no earlier than: (i) 100 days after the notices are made in order to comply with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d) or (ii) 60 days after the Claims Deadline, whichever is later.

11.16.   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it.''

11.17.   All dollar amounts are in United States dollars (USD).

11.18.   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void sixty (60) days after issuance and shall bear the language: "This check must be cashed within 60 days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and PTHC shall have no obligation to make payments to the Settlement Class Member for reimbursement under ¶ 2.1 or ¶ 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.19.   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

<u>**AGREED TO BY:**</u>

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____

**John A. Yanchunis, Esq.**
Florida Bar No. 324681
jyanchunis@ForThePeople.com
**Ryan D. Maxey, Esq.**
Florida Bar No. 59283
rmaxey@ForThePeople.com
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone:    (813) 223-5505

*Attorneys for Plaintiff and Proposed Class Counsel*

Jonathan C. Sullivan, Esq.
Michael A.H. Schoenberg, Esq.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11566
(516) 663-6600
jsullivan@rmfpc.com
mschoenberg@rmfpc.com

*Attorney for Defendant*

PERSONAL TOUCH HOLDING CORP.

By: _____

Michael Everetts,
*Individually and as Representative Plaintiff*

Name: Ronald J. Spielberger
Title: General Counsel &
          Chief Compliance Officer

33

Scanned with CamScanner

**EXHIBIT A**

**Claim Form**

# PERSONAL TOUCH HOLDING CORP.
# SETTLEMENT CLAIM FORM

**This Claim Form should be filled out online or submitted by mail if you received a Notice of Data Breach regarding the Data Breach from Personal Touch Holding Corp. ("PTHC") on or around March 24, 2021, and you (i) had your personal information or protected health information potentially exposed in the Data Breach and had unreimbursed costs or expenditures that are fairly traceable to the Data Breach and/or time spent remedying issues related to the Data Breach, (ii) did not have your personal information or protected health information potentially exposed in the Data Breach and had unreimbursed costs or expenditures that are fairly traceable to receipt of notice from Defendant of the Data Breach and/or time spent remedying issues related to the receipt of notice from Defendant of the Data Breach, and/or (iii) had your personal information or protected health information potentially exposed in the Data Breach and would like credit monitoring services and identity theft insurance.  You may get a check or electronic payment if you fill out this Claim Form, if the Settlement is approved, and if you are found to be eligible for a payment.**

The Settlement Notice describes your legal rights and options.  To obtain the Settlement Notice and find more information regarding your legal rights and options, please visit the official Settlement Website, [INSERT WEBSITE], or call toll-free [INSERT PHONE #].

If you wish to submit a claim for a settlement payment electronically, you may go online to the Settlement Website, [INSERT], and follow the instructions on the "Submit a Claim" page.

If you wish to submit a claim for a settlement payment via standard mail, you need to provide the information requested below and mail this Claim Form to [INSERT], postmarked by [INSERT MONTH AND DAY], 2023.  Please print clearly in blue or black ink.

1. CLASS MEMBER INFORMATION

*Required Information:*

First: _____ M: _____ Last: _____

Address 1:_____

Address 2: _____

City: _____ State: _____ ZIP: _____

Country: _____

Phone: _____

E-mail: _____

2.  PAYMENT ELIGIBILITY INFORMATION

To prepare for this section of the Claim Form, please review the Settlement Notice and the Settlement Agreement (available for download at [INSERT WEBSITE]) for more information on who is eligible for a payment and the nature of the expenses or losses that can be claimed.

To help us determine if you are entitled to a settlement payment, please provide as much information as possible.

A. Verification of Class Membership

You are only eligible to file a claim if you are a person to whom PTHC sent notification, whether by direct written notice or substitute notice, that personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of the Data Breach occurring in or about January 2021.

By submitting a claim and signing the certification below, you are verifying that you were notified by mail or via substitute notice of the Data Breach announced by PTHC on or about March 24, 2021.

In addition, to allow the Claims Administrator to confirm your membership in the Class, you must provide either:

(1) The unique identifier provided in the Notice you received by postcard or e-mail;

or

(2) name and physical address you provided to PTHC for healthcare or employment related purposes.

Thus, please **EITHER**:

(1)    Provide the unique identifier provided in the Notice you received: _____.

**OR**

(2)    Provide your name _____and physical address you provided to PTHC for healthcare or employment related purposes: _____.

**UPLOAD DOCUMENT** [SETTLEMENT ADMINISTRATOR TO ADD]

B. Out-Of-Pocket Expenses and Attested Time

Check the box for each category of out-of-pocket expenses or lost time that you incurred as a result of the Data Breach.  Please be sure to fill in the total amount you are claiming for each category and attach the required documentation as described in **bold type** (if you are asked to provide account statements as part of required proof for any part of your claim, you may redact unrelated transactions and all but the first four and last four digits of any account number).  Please round total amounts down or up to the nearest dollar.

I.    Expenses and Time Fairly Traceable to the Data Breach

If your personally identifiable information or protected health information ***was*** potentially exposed in the Data Breach, and you incurred expenses that are fairly traceable to the Data

36

Breach, you may be entitled to compensation for these expenses. To obtain reimbursement under this category, you must attest to the following:

☐ Unreimbursed fees or other charges from your bank or credit card company incurred from January 20, 2021 to [INSERT DATE] (the "Claims Deadline") due to the Data Breach.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: Unreimbursed overdraft fees, over-the-limit fees, late fees, or charges due to insufficient funds or interest.

**[UPLOAD DOCUMENTS] Required: A copy of a bank or credit card statement or other proof of claimed fees or charges (you may redact unrelated transactions and all but the first four and last four digits of any account number)**

☐ Unreimbursed fees relating to your account being frozen or unavailable incurred from January 20, 2021 to the Claims Deadline due to the Data Breach.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: You were charged interest by a payday lender due to card cancellation or due to an over-limit situation, or you had to pay a fee for a money order or other form of alternative payment because you could not use your debit or credit card, and these charges and payments were not reimbursed.

**[UPLOAD DOCUMENTS] Required: Attach a copy of receipts, bank statements, credit card statements, or other proof that you had to pay these fees (you may redact unrelated transactions and all but the first four and last four digits of any account number).**

☐ Unreimbursed fees or other charges relating to the reissuance of your credit or debit card incurred from January 20, 2021 to the Claims Deadline due to the Data Breach.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |

37

|  |  |  |
|--|--|--|
|  |  |  |

Examples: Unreimbursed fees that your bank charged you because you requested a new credit or debit card.

**[UPLOAD DOCUMENTS] Required: Attach a copy of a bank or credit card statement or other receipt showing these fees (you may redact unrelated transactions and all but the first four and last four digits of any account number).**

□ Other unreimbursed incidental telephone, internet, mileage or postage expenses directly related to the Data Security Incident incurred from January 20, 2021 to Claims Deadline due to the Data Breach.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: Unreimbursed long distance phone charges, cell phone charges (only if charged by the minute), or data charges (only if charged based on the amount of data used).

**[UPLOAD DOCUMENTS] Required: Attach a copy of the bill from your telephone company, mobile phone company, or internet service provider that shows the charges (you may redact unrelated transactions and all but the first four and last four digits of any account number.**

□ Credit Reports or credit monitoring charges purchased from January 20, 2021 to the Claims Deadline due to the Data Breach. This category is limited to services purchased primarily as a result of the Data Breach and if purchased from January 20, 2021 to the Claims Deadline.

To obtain reimbursement under this category, you must attest to the following:

□ I purchased credit reports from January 20, 2021 to the Claims Deadline, primarily due to the Data Breach and not for other purposes.

| DATE | COST |
|------|------|
|      |      |
|      |      |

Examples: The cost of a credit report(s) that you purchased after hearing about the Data Security Incident.

**[UPLOAD DOCUMENT] Required: Attach a copy of a receipt or other proof of purchase for each product or service purchased (you may redact unrelated transactions).**

☐ Between one (1) and three (3) hours of time spent monitoring accounts or otherwise dealing with the aftermath / clean-up of the Data Breach from January 20, 2021 to the Claims Deadline (round down to the nearest hour and check only one box).

    ☐ 1 Hour          ☐ 2 Hours          ☐ 3 Hours

Examples: You spent at least one (1) full hour calling customer service lines, writing letters or e-mails, or on the internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed. Please note that the time that it takes to fill out this Claim Form is not reimbursable and should not be included in the total number of hours claimed.

Check all activities, below, which apply.

    ☐      Time spent obtaining credit reports.

    ☐      Time spent dealing with a credit freeze.

    ☐      Time spent dealing with bank or credit card fee issues.

    ☐      Time spent monitoring accounts.

    ☐      Other.

If you choose any of the options above, please provide a brief description of (1) the actions taken in response to the Data Breach; and (2) the time associated with each action.

_____

_____

_____

_____ .

**To recover for lost time under this section, you must select one of the boxes above and provide a narrative description of the activities performed during the time claimed, and you must have at least one hour of lost time in order to claim this benefit.**

**Attestation (You must check the box below to obtain compensation for lost time)**

**☐ I attest under penalty of perjury that I spent the number of hours claimed above making reasonable efforts to deal with the Data Security Incident.**

II.       Expenses and Time Fairly Traceable to Receiving Notice of the Data Breach

If your personally identifiable information or protected health information **_was not_** potentially exposed in the Data Breach, and you incurred expenses or spent time as a result of receiving the Notice of Data Breach, you may be entitled to compensation for these expenses. To obtain reimbursement under this category, you must attest to the following:

□ The timing of the loss occurred from January 20, 2021 to the Claims Deadline.

□ Miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

□ Credit monitoring or other mitigative costs that were incurred on or after January 20, 2021.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

□ Between one (1) and three (3) hours of time spent remedying issues related to the receipt of notice from Defendant of the Data Breach from January 20, 2021 to the Claims Deadline (round down to the nearest hour), which has not already been claimed in Section I, above.

        Number of Hours:_____


        Examples: You spent at least one (1) full hour calling customer service lines, writing letters or e-mails, or on the internet in updating automatic payment programs because your card number changed.  Please note that the time that it takes to fill out this Claim Form is not reimbursable and should not be included in the total number of hours claimed.

        Check all activities, below, which apply.

        □        Calling bank/credit card customer service lines regarding potential fraudulent transactions.

        □        Time on the internet checking for potential fraudulent transactions.

☐   Time on the internet updating automatic payment programs due to new card issuance.

☐   Calling credit reporting bureaus regarding potential fraudulent transactions and/or credit monitoring.

☐   Other.

If you choose any of the options above, please provide a brief description of (1) the actions taken in response to the Data Breach; and (2) the time associated with each action.

_____
_____
_____
_____
_____
_____

**To recover for lost time under this section, you must select one of the boxes above and provide a narrative description of the activities performed during the time claimed, and you must have at least one hour of lost time in order to claim this benefit.**

**Attestation (You must check the box below to obtain compensation for lost time)**

**☐ I attest under penalty of perjury that I spent the number of hours claimed above making reasonable efforts to deal with the Data Breach.**

III.   <u>Identity Defense Total Service</u>

All Settlement Class Members whose personally identifiable information or protected health information was potentially exposed in the Data Breach are eligible to receive two (2) years of Identity Defense Total Service.

Do you wish to sign up for free Identity Defense Total Service?

☐   Yes, I want to sign up to receive free Identity Defense Total Service.

Email Address: _____

If you select "yes" for this option, you will need to follow instructions and use an activation code that you receive after the Settlement is final. Identity Defense Total Service will not begin until you use your activation code to enroll. Activation instructions will be provided to your email address or, if you do not have an email address, to your home address. If you do not select "yes" for this option, then you will not receive free Identity Defense Total Services.

C.   Certification

41

I declare under penalty of perjury under the laws of the United States that the information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed at _____ [City], _____ [State] on the date set forth below

I understand that I may be asked to provide supplemental information by the Claims Administrator before my claim will be considered complete and valid.

Print Name:_____

Signature:_____

Date:_____

D. Submission Instruction

Once you've completed all applicable sections, please mail this Claim Form and all required supporting documentation to the address provided below, postmarked by _____, 2023.

[INSERT CLAIMS ADMINISTRATOR
MAILING INFORMATION]

42

**EXHIBIT B**

**Short Form Notice**

## Notice of Proposed Settlement of Class Action

**If you received a Notice of Data Breach regarding the Data Breach from Personal Touch Holding Corp. ("PTHC") on or around March 24, 2021, you may be eligible for a class action settlement payment.**

A Settlement has been reached in a class action lawsuit about a data breach that occurred in or about January 2021, which potentially exposed personally identifiable information ("PII") and/or protected health information ("PHI") of patients and employees of PTHC or its subsidiaries, (the "Data Breach"). The lawsuit alleges that PTHC was responsible for the Data Breach because it did not take appropriate care to protect PII and PHI from unauthorized disclosure. PTHC denies the claims and denies any wrongdoing.

**PTHC records show you are a likely member of the Settlement Class.** Individuals whose information *was* potentially exposed in the Data Breach may submit a claim of up to $7,500.00 for documented unreimbursed, out-of-pocket expenses and attested time fairly traceable to the Data Breach. Individuals whose information *was not* potentially exposed in the Data Breach may submit a claim for documented unreimbursed, out-of-pocket expenses of up to $125.00 and attested time fairly traceable to receiving notice of the Data Breach. The Settlement also includes two years of Identity Defense Total Service for individuals whose personally identifiable information or protected health information was potentially exposed in the Data Breach.

**If you are a Settlement Class Member and you want to receive any benefits from the Settlement, you must complete and submit a Claim Form along with any required supporting information. Claim Forms can be found and completed on this website: www.SettlementURL.com. The deadline to submit a Claim Form is Month 00, 2023.**

Settlement Class Members may also request exclusion from the Settlement or object to it. Requests for exclusion are due by Month 00, 2023. Settlement Class Members who do not request exclusion can object to the Settlement. Objections are due by Month 00, 2023. The Court will hold a Final Settlement Approval Hearing on Month 00, 2023 at 00:00 a.m. at the United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, NY 11722, Courtroom 920, to consider whether to approve the settlement. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for attorneys' fees, costs, and expenses of $510,000 and service award of up to $2,500 for the Representative Plaintiff. You or your own lawyer may ask to appear at the hearing to be heard by the Court, but you do not have to. The motion for attorneys' fees and costs and service awards for the Representative Plaintiff will be posted on the website after it is filed with the Court.

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit: John A. Yanchunis and Ryan D. Maxey of MORGAN & MORGAN COMPLEX LITIGATION GROUP, 201 N. Franklin St., 7th Floor, Tampa, Florida 33602.

***This is only a summary***. For detailed information visit **www.SettlementURL.com** or call **1-000-000-0000**. You may contact the Settlement Administrator at Personal Touch Holding Corp. Settlement, c/o Settlement Administrator, PO Box 0000, City, State, Zip.

**EXHIBIT C**

**Long Form Notice**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

# If you received a Notice of Data Breach regarding the Data Breach from Personal Touch Holding Corp. ("PTHC") on or around March 24, 2021, you may be eligible for a class action settlement payment.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit about a data breach that occurred in or around January 2021, which potentially exposed personally identifiable information ("PII") and/or protected health information ("PHI") of patients and employees of PTHC or its subsidiaries (the "Data Breach").

- PTHC, through its subsidiaries, provides home health and home care personnel and related services to individuals in their homes. The circumstances giving rise to this case occurred in or about January 2021 and involved an unauthorized person who accessed PTHC's private cloud hosted by its managed service providers and may have accessed private cloud business records of PTHC and its direct and indirect subsidiaries (the "Data Breach"). The exposed information may have included medical treatment information, insurance card and health plan benefit numbers, medical record numbers, first and last name, address, telephone numbers, date of birth, Social Security numbers, and financial information, including check copies, credit card numbers, and bank account information. Subsequently, a lawsuit was filed against PTHC, alleging that it did not take appropriate care to protect the patients and employees from the Data Breach.

- PTHC denies all of the Plaintiff's claims in the lawsuit and maintains it did not do anything wrong but has agreed to settle the case to avoid the expense and burdens of litigation.

- The Settlement includes all Persons to whom PTHC sent notification, whether by direct written notice or substitute notice, that their personal information and/or protected health information may have been or was exposed to unauthorized third parties as a result of the Data Breach.

- The Settlement provides payments to individuals who submit valid claims for out-of-pocket expenses and lost time that are fairly traceable to the Data Breach or fairly traceable to receiving notice of the Data Breach.

- The Settlement also includes two years of Identity Defense Total Service for individuals whose personally identifiable information or protected health information was potentially exposed in the Data Breach. You must submit a claim to receive this benefit.

**Your legal rights are affected even if you do nothing. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim** | The only way to get a payment and/or credit monitoring. You must submit a claim by **Month Day, 2023.** |
| **Ask to be Excluded** | Get no payment. The only option that allows you to sue PTHC over the claims resolved by this Settlement. You must exclude yourself by **Month Day, 2023.** |
| **Object** | Write to the Court about why you do not like the Settlement. You must object by **Month Day, 2023.** |
| **Do Nothing** | Get no payment. Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will only be made after the Court grants final approval of the Settlement and after any appeals are resolved.

| WHAT THIS NOTICE CONTAINS |
| --- |

**BASIC INFORMATION** ................................................................... **Page __**
1.  Why was this Notice issued?
2.  What is this lawsuit about?
3.  Why is this lawsuit a class action?
4.  Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ..................................................... **Page __**
5.  How do I know if I am included in the Settlement?
6.  What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS** ........................................................ **Page __**
7.  What does the Settlement provide?
8.  What payments are available for individuals whose personally identifiable information or protected health information *was* potentially exposed in the Data Breach?
9.  What payments are available for individuals whose personally identifiable information or protected health information *was not* potentially exposed in the Data Breach?

**HOW TO GET BENEFITS** ................................................................ **Page __**
10. How do I get benefits?
11. How will claims be decided?

**REMAINING IN THE SETTLEMENT** ................................................ **Page __**
12. Do I need to do anything to remain in the Settlement?
13. What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ......................... **Page __**
14. If I exclude myself, can I get a payment from this Settlement?
15. If I do not exclude myself, can I sue PTHC for the same thing later?
16. How do I exclude myself from the Settlement?

**THE LAWYERS REPRESENTING YOU** ............................................ **Page __**
17. Do I have a lawyer in this case?
18. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................ **Page __**
19. How do I tell the Court that I do not like the Settlement?
20. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** .............................................. **Page __**
21. When and where will the Court decide whether to approve the Settlement?
22. Do I have to attend the hearing?
23. May I speak at the hearing?

**IF YOU DO NOTHING** .................................................................... **Page __**
24. What happens if I do nothing?

**GETTING MORE INFORMATION** .................................................... **Page __**
25. How do I get more information?

# BASIC INFORMATION

**1.  Why was this Notice issued?**

The Court authorized this notice because you have a right to know about the proposed Settlement in this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement.  This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the Settlement.

This matter involves a lawsuit styled *Everetts v. Personal Touch Holding Corp.*, in the United States District Court for the Eastern District of New York, Case No. 2:21-cv-02061. The person who sued is called the Plaintiff.  PTHC is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit claims that PTHC ("Defendant") was responsible for the Data Breach and asserts claims such as: negligence, breach of contract,  and breach of confidence.  The lawsuit seeks compensation for people who experienced unreimbursed, documented out-of-pocket expenses, fraudulent charges, and/or lost time related the Data Breach or to receiving notice of the Data Breach.

PTHC denies all of the Plaintiff's claims and maintains it did not do anything wrong.

**3.  Why is this lawsuit a class action?**

In a class action, one person called the "Representative Plaintiff" sues on behalf of all people who have similar claims.  All of these people together are the "Class" or "Class Members."  In this case, the Representative Plaintiff is Michael Everetts. One Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4.  Why is there a Settlement?**

By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid timely claims will get compensation.  The Representative Plaintiff and his attorneys believe the Settlement is fair, reasonable, and adequate and, thus, best for the Class and its members.  The Settlement does NOT mean that PTHC did anything wrong.

# WHO IS IN THE SETTLEMENT?

**5.  How do I know if I am included in the Settlement?**

You are included in the Settlement Class if you are a person to whom PTHC sent notification, whether by direct written notice or substitute notice, on or about March 24, 2021, that personal information and/or protected health information may have been exposed to unauthorized third parties as a result of the Data Breach occurring in or about January 2021.

Specifically excluded from the Settlement Class are: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class;

49

(iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads *nolo contendere* to any such charge.

## 6.  What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are included in the Settlement, you may call 1-XXX-XXX-XXXX with questions or visit [WEBSITE]. You may also write with questions to Personal Touch Holding Corp. Claims Administrator, PO Box XXXX, City, State zip code. Please do not contact the Court with questions.

# THE SETTLEMENT BENEFITS

## 7.  What does the Settlement provide?

The Settlement will provide payments to people who submit valid timely claims.

There are two types of general payments that are available:

(1) Reimbursement for Out-of-Pocket Losses and Attested Time for individuals whose personally identifiable information or protected health information *was* potentially exposed in the Data Breach (Question 8) and

(2) Reimbursement for Out-of-Pocket Losses and Attested Time for individuals whose personally identifiable information or protected health information *was **not*** potentially exposed in the Data Breach (Question 9).

You must provide proof of your class membership in the form of either (1) the unique identifier provided in the notice you received by postcard or e-mail; or (2) name and physical address you provided to PTHC or its subsidiaries for healthcare or employment purposes.

If you provide a bill or payment card statement as part of required proof for any part of your claim, you may redact unrelated transactions and all but the first four and last four digits of any account number. In order to claim each type of payment, you must provide related documentation with the Claim Form, and the expense for which you are submitting a claim form cannot have been reimbursed through any other source.

For individuals whose personally identifiable information or protected health information was potentially exposed in the Data Breach, the Settlement also includes Identity Defense Total Service for a period of 2 years from the effective date of the Settlement.  You must submit a claim to receive this benefit.

Finally, as part of the Settlement, PTHC has agreed to adjust its internal controls and systems to further secure its personally identifiable information and protected health information.  More details are provided in the Settlement Agreement, which is available at [WEBSITE].

**8.  What payments are available for individuals whose personally identifiable information or protected health information *was* potentially exposed in the Data Breach?**

Class Members whose personally identifiable information or protected health information ***was*** potentially exposed in the Data Breach are each eligible to receive reimbursement of up to $7,500 (in total, per person) for the following categories of unreimbursed, out-pocket expenses and attested time fairly traceable to the Data Breach, including:

- unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information;

- other miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, bank, and long-distance telephone charges;

- credit monitoring or other mitigative costs that were incurred on or after January 20, 2021 through the date of the class member's claim submission;

- unpaid time off work to address issues fairly traceable to the Data Breach at the actual hourly rate of that class member;

- up to three (3) hours of unreimbursed attested lost time (at $25 per hour) spent remedying issues related to the Data Breach.

**9.  What payments are available for individuals whose personally identifiable information or protected health information *was not* potentially exposed in the Data Breach?**

Class Members whose personally identifiable information or protected health information ***was not*** potentially exposed in the Data Breach are each eligible to receive reimbursement for the following categories of unreimbursed, out-pocket expenses up to a cap of One Hundred Twenty Five Dollars ($125) and attested time fairly traceable to receiving notice of the Data Breach, including:

- miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and

- credit monitoring or other mitigative costs that were incurred on or after January 20, 2021 (or the earliest verifiable date of receipt of notice from Defendant of the Data Breach) through the date of the class member's claim submission.

## HOW TO GET BENEFITS

**10.  How do I get benefits?**

To ask for a payment or, if applicable, to sign up for credit monitoring, you must complete and submit a Claim Form.  Claim Forms are available at [WEBSITE], or you may request one by mail by calling [PHONE #].  Read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than **Month Day, 2023** to:

Personal Touch Holding Corp. Claims Administrator
PO Box XXXXX
City, State zip code

| **11.  How will claims be decided?** |
|---|

The Claims Administrator will decide in their professional judgment whether the information provided on a Claim Form is complete, timely and valid.  The Claims Administrator may require additional information from any claimant.  If the required information is not provided timely, the claim will be considered invalid and will not be paid.

# REMAINING IN THE SETTLEMENT

| **12.  Do I need to do anything to remain in the Settlement?** |
|---|

You do not have to do anything to remain in the Settlement, but if you want a payment you must submit a Claim Form postmarked by **Month Day, 2023**.

| **13.  What am I giving up as part of the Settlement?** |
|---|

If the Settlement becomes final, you will give up your right to sue for the claims being resolved by this Settlement.  The specific claims you are giving up are described in Section 1.27 of the Settlement Agreement.  You will be "releasing" PTHC and all related people or entities as described in Sections 1.26 and 1.28 of the Settlement Agreement.  The Settlement Agreement is available at [WEBSITE].

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions you can talk to the law firm listed in Question 17 for free or, you can, of course, talk to your own lawyer at your own expense if you have questions about what this means.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep the right to sue PTHC about issues in this case, then you must take steps to get out of the Settlement Class.  This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

| **14.  If I exclude myself, can I get a payment from this Settlement?** |
|---|

No.  If you exclude yourself, you will not be entitled to any benefits of the Settlement, but you will not be bound by any judgment in this case.

| **15.  If I do not exclude myself, can I sue PTHC for the same thing later?** |
|---|

No.  Unless you exclude yourself, you give up any right to sue for the claims that this Settlement resolves.  You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case.  If you exclude yourself, do not submit a Claim Form to ask for a payment.

| **16.  How do I exclude myself from the Settlement?** |
|---|

To exclude yourself, send a letter that says you want to be excluded from the Settlement in lawsuit styled *Everetts v. Personal Touch Holding Corp.*, in the United States District Court for the Eastern District of New York, Case No. 2:21-cv-02061.  Include your name, address, and signature.  You must mail your Exclusion Request postmarked by **Month Day, 2023**, to:

Personal Touch Holding Corp. Settlement Exclusions
PO Box XXXXX
City, State zip code

# THE LAWYERS REPRESENTING YOU

### 17.  Do I have a lawyer in this case?

Yes.  The Court appointed the following lawyers as "Class Counsel": John A. Yanchunis and Ryan D. Maxey of MORGAN & MORGAN COMPLEX LITIGATION GROUP, 201 N. Franklin St., 7th Floor, Tampa, Florida 33602.

You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 18.  How will the lawyers be paid?

Class Counsel will request the Court's approval of an award for attorneys' fees and reasonable costs and expenses of up to $510,000.  Class Counsel will also request approval of a service award of $2,500 for the Representative Plaintiff.  Any amount that the Court awards for attorneys' fees, costs, expenses, and an incentive award will be paid separately per the terms of the Settlement Agreement and will not reduce the amount of payments to Class Members who submit valid claims.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 19.  How do I tell the Court that I do not like the Settlement?

You can object to the Settlement if you do not like it or some part of it.  The Court will consider your views.  To do so, you must **file** a written objection in this case, *Everetts v. Personal Touch Holding Corp.*, in the United States District Court for the Eastern District of New York, Case No. 2:21-cv-02061, with the Clerk of the Court at the address below.

Your objection must include all of the following:

- the name or caption of this Litigation;
- your full name, address, telephone number, and e-mail address (if any);

53

- information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class, which is described in response to Question 5;

- a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable;

- the identity of all counsel representing you, if any, in connection with your objection;

- a statement confirming whether you intend to personally appear and/or testify at the Final Fairness Hearing;

- a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and

- your signature or the signature of your duly authorized attorney or other duly authorized representative.

To be timely, your objection must be **filed** with the Clerk of the Court for the United States District Court for the Eastern District of New York no later than ==Month Day,== **2023**.

In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel, postmarked no later than ==Month Day,== **2023**:

| Court | Class Counsel | PTHC's Counsel |
|---|---|---|
| Clerk of the Court<br>United States District Court for the New York Eastern District<br>100 Federal Plaza<br>Central Islip, NY 11722 | John A. Yanchunis<br>Ryan D. Maxey<br>MORGAN & MORGAN COMPLEX LITIGATION GROUP<br>201 N. Franklin St., 7th Floor, Tampa, Florida 33602 | RUSKIN MOSCOU FALTISCHEK, P.C.<br>Jonathan C. Sullivan, Esq.<br>Michael A.H. Schoenberg, Esq.<br>1425 RXR Plaza<br>East Tower, 15th Floor<br>Uniondale, New York 11566 |

**20.  What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved.  You can object only if you do not exclude yourself from the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval of the Settlement.

**21.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at __:__ on **Month Day, 2023**, at the United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, NY 11722, Courtroom 920 (or by Zoom if the Court so orders). The hearing may be moved to a different date or time without additional notice, so it is a good idea to check [WEBSITE] or call [PHONE #]. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for an incentive award for the Representative Plaintiff. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 22. Do I have to attend the hearing?

No. Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 19, the Court will consider it.

### 23. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file an objection according to the instructions in Question 19, including all the information required therein. Your Objection must be **filed** with the Clerk of Court for the United States District Court for the Eastern District of New York by mailing it postmarked no later than **Month Day, 2023**. In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel listed in Question 19, postmarked no later than **Month Day, 2023**.

## IF YOU DO NOTHING

### 24. What happens if I do nothing?

If you do nothing, you will get no benefits from this Settlement. Unless you exclude yourself, after the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit about the legal issues in this case, ever again against PTHC or any related people or entities as described in Sections 1.26 and 1.28 of the Settlement Agreement. The Settlement Agreement is available at [WEBSITE].

## GETTING MORE INFORMATION

### 25. How do I get more information?

This Notice summarizes the proposed Settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement at [WEBSITE]. You may also write with

questions to the Claims Administrator, PO Box XXXXX, City, State Zip.  You can also get a Claim Form at the website, or by calling the toll-free number, [PHONE].

**EXHIBIT D**

**Proposed Order**

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL EVERETTS, | |
| on behalf of himself and all others similarly situated, | Case No.: 2:21-cv-02061 (JMA) (ARL) |
|      Plaintiff, | |
| v. | |
| PERSONAL TOUCH HOLDING CORP., a Delaware corporation, | |
|      Defendant. | |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE, GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND SCHEDULING FINAL APPROVAL HEARING**

Before the Court is Plaintiff's Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of a proposed class action settlement in this action (Doc. __), the terms of which are set forth in a Settlement Agreement with accompanying exhibits attached as Exhibit A to Plaintiff's motion (the "Settlement Agreement").[1] Having fully considered the issue, the Court hereby GRANTS the motion and orders as follows:

    1.    **Class Certification for Settlement Purposes Only**. The Settlement Agreement

provides for a Settlement Class comprised of: (i) an Exposure Class consisting of individuals

whose personally identifiable information or protected health information was potentially exposed

in the security breach, and (ii) a Non-Exposure Class consisting of individuals whose personally

identifiable information or protected health information was not potentially exposed in the security

breach, defined as follows:

    Settlement Class:

    [A]ll individuals who are a member of the Exposure Class or the

---

[1] All defined terms herein have the same meaning as set forth in the Settlement Agreement.

Non-Exposure Class.  The Settlement Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.  PTHC represents that the Settlement Class contains approximately 750,000 individuals who received notice from PTHC of the Data Breach.

Exposure Class:

"[A]ll individuals who received notice of the security breach that PTHC announced on or around March 24, 2021 and whose personally identifiable information or protected health information was potentially exposed in the security breach.  The Exposure Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

Non-Exposure Class:

"[A]ll individuals who received notice from Defendant of the security breach that Defendant announced on or around March 24, 2021 and whose personally identifiable information or protected health information was not potentially exposed in the security breach."  The Non-Exposure Class specifically excludes: (i) PTHC and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other individual found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Breach or who pleads nolo contendere to any such charge.

Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is justified. The Court finds that it will likely be able to approve the proposed Settlement as fair,

reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement

Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule

23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds for settlement purposes

that: a) the Settlement Class is so numerous that joinder of all Settlement Class Members would

be impracticable; b) there are issues of law and fact that are common to the Settlement Class; c)

the claims of the Settlement Class Representatives are typical of and arise from the same operative

facts and seek similar relief as the claims of the Settlement Class Members; d) the Settlement Class

Representatives will fairly and adequately protect the interests of the Settlement Class as the

Settlement Class Representative have no interest antagonistic to or in conflict with the Settlement

Class and have retained experienced and competent counsel to prosecute this matter on behalf of

the Settlement Class; e) questions of law or fact common to Settlement Class members

predominate over any questions affecting only individual members; and f) a class action and class

settlement is superior to other methods available for a fair and efficient resolution of this

controversy.

2.      **Settlement Class Representatives and Settlement Class Counsel**. The Court

finds that the Plaintiff named in the Complaint will likely satisfy the requirements of Rule

23(e)(2)(A) and be appointed as the Settlement Class representative. Additionally, the Court finds

that proposed Class Counsel, John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan, will

likely satisfy the requirements of Rule 23(e)(2)(A) and are appointed as Class Counsel pursuant to

Rule 23(g)(1).

3.      **Preliminary Settlement Approval.** Upon preliminary review, the Court finds the

Settlement is fair, reasonable, and adequate to warrant providing notice of Settlement to the

Settlement Class and accordingly it is preliminarily approved. In making this determination, the

Court has considered the benefits to the Settlement Class, the specific risks faced by the Settlement Class in prevailing on Plaintiff's claims, the stage of the proceedings at which the Settlement was reached, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, and all of the other factors required by Rule 23.

4.      **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

5.      **Final Approval Hearing**. A Final Approval Hearing shall be held on _____ _____, 2023, at _____ [via telephone or videoconference or in-person at the United States Courthouse, 100 Federal Plaza, Central Islip, NY 11722, Courtroom 920], to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) the Settlement should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (e) the application of the Settlement Class Representatives for service awards should be approved.

6.      **Settlement Administrator**. The Court appoints Kroll as the Settlement Administrator, with responsibility for class notice and claims administration. The Settlement Administrator is directed to perform all tasks the Settlement Agreement reasonably requires in effectuating the Notice, Notice Program, and Claims Administration. The Settlement

Administrator's fees will be paid by PTHC pursuant to the Settlement Agreement.

7.      **Notice**. The proposed method for providing notice set forth in the Settlement Agreement and the Class Notice and Claim Forms attached to the Settlement Agreement as Exhibits A, B, and C are hereby approved. Non-material modifications to these Exhibits may be made with approval by the parties but without further order of the Court.

8.      **Findings Concerning Notice**. The Court finds that the proposed form, content, and method of giving notice to the Settlement Class as described in the Settlement Agreement and exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by class members.

The Settlement Administrator is directed to carry out the Notice Plan in conformance with the Settlement Agreement.

9.      **Class Action Fairness Act Notice**. Within 10 days after the filing of the motion to permit issuance of notice, Defendant shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

10.     **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written request for exclusion to the Settlement Administrator at the address and in the manner and within the time provided in the Notice. Such requests for exclusions must meet the opt-out deadline established by this Order and stated in the Notice.  Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

A request for exclusion must be in writing and: (a) state the name of this proceeding (*Everetts v. Personal Touch Holding Corp.*, in the United States District Court for the Eastern District of New York, Case No. 2:21-cv-02061, or similar identifying words such as "Personal Touch Holding Corp. Data Breach Lawsuit"); (b) state the name and address of the Settlement Class Member seeking exclusion; (c) state "Request for Exclusion" or words communicating the person's request for exclusion from the Settlement Class; and (d) must be signed by the Settlement Class Member.

A request for exclusion that does not include the foregoing information, or that is sent to an address other than the one designated in the Notice, or that is not received within the specified time shall be invalid and the Settlement Class Member serving such a request shall, if the Final Approval Order and Judgment is entered, be considered a Settlement Class Member and shall be bound by any judgment entered herein with respect to the Settlement Class.

The Settlement Administrator shall forward a list of all requests for exclusion to Class Counsel and to Defendant's Counsel within 7 days of the Opt-Out Deadline.

If the Final Approval Order and Judgment is entered, any Settlement Class Member who has not submitted a timely, valid written request for exclusion from the Settlement Class shall be bound by all subsequent proceedings, orders, and judgments in this action, including but not limited to the Release set forth in the Final Approval Order and Judgment. Settlement Class Members who submit valid and timely requests for exclusion shall not be entitled to receive any benefits from the Settlement.

Upon entry of the Order and Final Judgment all members of the Settlement Class who have not personally, validly, and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against the Released Persons under the Settlement Agreement with respect to the Release Claims.

11.    **<u>Objections and Appearances</u>**. Any Settlement Class Member who does not elect to be excluded from the Settlement Class may object to the Settlement, Class Counsel's request for fees and expenses, and/or the request for service award payments to the Settlement Class Representatives; provided, however, that no Settlement Class Member shall be heard or entitled to contest such matters, unless the objection is: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, at the address listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. For the objection to be considered by the Court, the objection must be in writing and include:

(a)    the name or caption of this Litigation;

(b)    your full name, address, telephone number, and e-mail address (if any);

(c)    information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class, which is described in response to Question 5;

(d)    a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable;

(e)    the identity of all counsel representing you, if any, in connection with your objection;

64

(f)    a statement confirming whether you intend to personally appear and/or testify at the Final Fairness Hearing;

(g)    a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and

(h)    your signature or the signature of your duly authorized attorney or other duly authorized representative.

Any Settlement Class Member who fails to comply with the provisions in this Order and/or fails to timely file and serve an objection in writing in accordance with this Order and the Settlement Agreement will waive and forfeit any and all rights they may have to object, will have their objection stricken from the record, and will lose their rights to appeal from approval of the Settlement. Any such Settlement Class Member also shall be bound by all subsequent proceedings, orders, and judgments in this action, including but not limited to the Release set forth in the Final Approval Order and Judgment if entered.

12.    **Claims Process**. The Settlement Agreement contemplates the establishment of a claims process. As set forth in the Settlement Agreement, PTHC shall pay up to $3,000,000.00 as an aggregate cap for the following general categories of relief: (i) for the Exposure Class, reimbursement of up to $7,500 per Exposure Class Member for out-of-pocket losses and attested time fairly traceable to the security breach; (ii) for the Non-Exposure Class, the reimbursement for out-of-pocket losses up to $125 per Non-Exposure Class Member and attested time fairly traceable to receiving notice of the security incident, (iii) for the Exposure Class, Identity Defense Total Service up to a separate cap of $67,000; and (iv) settlement administration fees.   The Court preliminarily approves this process and directs the Settlement Administrator to make the claim forms or their substantial equivalents available to Settlement Class Members in the manner specified in the Notice.

The Settlement Administrator will be responsible for effectuating the claims process.

Settlement Class Members who qualify for and wish to submit a claim form shall do so in

accordance with the requirement and procedures specified in the Class Notice and the claim forms. If the Final Approval Order and Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the claim form shall be forever barred from receiving any such benefit, but will in all other respects by subject to and bound by the provisions in the Final Approval Order and Judgment, including the release.

13.     **Termination of Settlement**. This Order, the Settlement Agreement, the proposed settlement, and all related proceedings shall become null and void, shall have no further force or effect, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before the Settlement Agreement was signed, if: a) the Settlement is not finally approved by the Court, b) the Settlement Agreement and the proposed settlement are terminated in accordance with the applicable provisions of the Settlement Agreement; or c) there is no Effective Date. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever, including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are or ever were satisfied for purposes of this litigation. The Action shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

14.     **Use of Order**. This Order shall be of no force or effect if the Final Approval Order and Judgment is not entered or there is no Effective Date. Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or

contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability for any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current propose settlement. Nor shall this Order be construed or used as an admission, concession, or declaration by or against any Settlement Class representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claims they may have in this litigation or in any other lawsuit.

15. **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the Parties, if appropriate, without further notice to the Settlement Class.

16. **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

| Event | Timing |
| --- | --- |
| Deadline for Defendant to disseminate CAFA notices | [10 days from the filing of this motion] |
| Deadline for Defendant to provide Settlement Class List to Settlement Administrator pursuant to the Settlement Agreement | [30 days after order directing class notice] |

| Event | Timing |
|---|---|
| Notice Program Commencement | [30 days following Preliminary Approval Order] |
| Notice Program Completion | [60 days following Preliminary Approval Order] |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service award | [21 days before objection and opt-out deadline] |
| Objection Deadline | [90 days after notice program commences] |
| Opt-Out Deadline | [90 days after notice program commences] |
| Deadline for Plaintiff to file motion for final approval of settlement and responses to any timely submitted Class member objections, which shall include a declaration from the Settlement Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | [21 days prior to Final Approval hearing] |
| Claims Deadline | [90 days after notice program commences] |
| Final Approval Hearing | [No earlier than: (i) 100 days after Defendant notifies the appropriate government officials pursuant to CAFA or (ii) 60 days after the Claims Deadline, whichever is later] |

**DONE AND ORDERED** in Central Islip, New York on this _____ day of _____, 2023.

_____
**HON. JOAN M. AZRACK**
**UNITED STATES DISTRICT JUDGE**

68