THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL EVERETTS,<br><br>on behalf of himself and all others similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>PERSONAL TOUCH HOLDING CORP., a Delaware corporation,<br><br> Defendant. | Case No.: 2:21-cv-02061 (JMA) (ARL) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

 Plaintiff Michael Everetts ("Plaintiff") respectfully moves for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, Plaintiff respectfully requests that the Court, after the final approval hearing scheduled for July 22, 2024, grant this motion, grant Plaintiffs' Unopposed Initial Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 40), as supplemented by Plaintiff's Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 42), and enter a final judgment dismissing this case.

## I. Introduction

 Plaintiff, by and through the undersigned Settlement Class Counsel,[1] on behalf of himself and the Settlement Class, respectfully submits this motion pursuant to Federal Rule of Civil

---

[1] The Court appointed John A. Yanchunis and Ryan D. Maxey as Class Counsel. (ECF No. 39 ¶ 2).

Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement ("S.A.") (ECF No. 37-1) and for certification of the Settlement Class.[2]

If approved, the Settlement will successfully resolve the claims of approximately 753,107 individuals nationwide who were notified that Defendant ("PTHC") suffered a cyber-security attack on its private cloud hosted by its managed service providers (the "Data Breach"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for PTHC to pay an aggregate cap of $3,000,000.00 for the following: (i) valid and approved claims made by members of the Exposure Class[3] under S.A. ¶ 2.1, (ii) valid and approved claims made by members of the Non-Exposure Class[4] under S.A. ¶ 2.2, and (iii) settlement administration fees under S.A. ¶ 3.6 ($369,030.80 incurred to date and $170,000.00 estimated to be incurred to complete administration of the settlement).  Declaration of Scott M. Fenwick ("Fenwick Decl.") ¶ 19, attached hereto as **Exhibit A**.  PTHC will also separately pay the cost of Identity Defense Total

---

[2] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement or in the Declaration of John A. Yanchunis in Support of Plaintiff's Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement ("Yanchunis Decl.") (ECF No. 37-2) and the Declaration of Ryan D. Maxey in Support of Plaintiff's Unopposed Initial Motion for Service Award and Award of Attorneys' Fees and Litigation Costs ("Decl. in Support of Service Award, Attorney's Fees, and Litigation Costs") (ECF No. 41-1). Both Declarations are an integral part of this submission and, for the sake of brevity herein, Plaintiff respectfully refers the Court to the Declarations for a detailed description of, inter alia: the procedural history of the Action and the claims asserted, the negotiations resulting in the Settlement and the risks of continued litigation.
[3] The Exposure Class means Settlement Class members whose personally identifiable information or protected health information was potentially exposed in the security breach. S.A. ¶ 1.12.
[4] The Non-Exposure Class means Settlement Class members whose personally identifiable information or protected health information was not potentially exposed in the security breach. S.A. ¶ 1.17.  In other words, they are receiving benefits for time or money spent in response to receiving notice of the Data Breach.  See S.A. ¶¶ 2.2.1, 2.2.4.

Service for members of the Exposure Class, subject to an aggregate cap of $67,000.00.

On January 22, 2024, the Court preliminarily approved the Settlement, finding that the Court "will likely be able to approve the proposed Settlement as fair, reasonable, and adequate." (ECF No. 39) ("Preliminary Approval Order") ¶ 1. The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 743,888 individual potential Class Members who were sent Notice, only three (3) have requested exclusion and none have submitted objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiff and Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff requests that the Court finally approve the Settlement, certify the settlement class, grant Plaintiff's Unopposed Initial Motion for Service Award and Award of Attorney's Feesd and Litigation Costs, and enter a final judgment dismissing this case.

## II.  Summary of the Action and Settlement

Plaintiff respectfully refers the Court to his Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement (ECF No. 37) and his Memorandum in Support of Unopposed Initial Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 41) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiff highlights the following:

### A. Background

Plaintiff alleges that in or around March 2021, Defendant sent Notice of the Data Breach

3

to 753,107 potentially affected people concerning an unauthorized person who may have accessed private cloud business records of PTHC and its direct and indirect subsidiaries, including medical treatment information, insurance card and health plan benefit numbers, medical record numbers, first and last name, address, telephone numbers, date of birth, Social Security numbers, and financial information, including check copies, credit card numbers, and bank account information. On February 24, 2022, the parties participated in a full-day in-person mediation facilitated by an experienced JAMS mediator, Andrew Nadolna, who has over 25 years of experience in mediation. On June 2, 2022, the parties conducted a second session with Mr. Nadolna.  Over the ensuing months, the parties continued to negotiate the terms of a potential settlement.  After coming to an agreement in principle, the parties finalized the terms of the Settlement Agreement and the attached exhibits.

    **B.**    **Terms of the Settlement**

If the Settlement receives final approval, PTHC will pay an aggregate cap of $3,000,000.00 for the following:

    (i)    up to $7,500.00 per Exposure Class Member for unreimbursed costs or expenditures that are fairly traceable to the security breach, including (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (2) other miscellaneous expenses incurred related to any Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, bank, and long-distance telephone charges; (3) credit monitoring or other mitigative costs that were incurred on or after January 20, 2021 (or the earliest verifiable date the security breach occurred) through the date of the class member's claim submission; and (4)

    unpaid time off work to address issues fairly traceable to the security breach at the actual hourly rate of that class member;

(ii)   for members of the Exposure Class with Out-of-Pocket Losses, payment for up to three (3) hours of time spent remedying issues related to the security breach at Twenty Five Dollars ($25) per hour;

(iii)   up to $125 per Non-Exposure Class Member for unreimbursed costs or expenditures that are fairly traceable to receipt of notice from Defendant of the security breach;

(iv)   for members of the Non-Exposure Class with Out-of-Pocket Losses, payment for up to three (3) hours of time spent remedying issues related to the receipt of notice from Defendant of the security breach at Twenty Five Dollars ($25) per hour; and

(v)   settlement administration fees of $539,030.80 ($369,030.80 incurred to July 1, 2024 and $170,000.00 estimated to be incurred to complete administration of the settlement). Fenwick Decl. ¶ 19.

As of July 1, 2024, (1) the Exposure Class has submitted 893 Approved Claims for Attested Time with an aggregate estimated value of $60,275 and 4 Approved Claims for Out-of-Pocket Losses with an aggregate estimated value of $1,009.88 and (2) the Non-Exposure Class has submitted 585 Approved Claims for Attested Time with an aggregate estimated value of $36,850 and 1 Approved Claim for Out-of-Pocket Losses with an estimated value of $75. *Id.* ¶ 16. Accordingly, the aggregate value of claims for Attested Time and Out-of-Pocket Losses is $98,209.88.

PTHC will also separately pay the cost of two years of Identity Defense Total Service for members of both the Exposure Class and the Non-Exposure Class who make a claim for this

5

benefit, subject to an aggregate cap of $67,000.00.  As of July 1, 2024, the Exposure Class has submitted 620 Approved Claims for this benefit and the Non-Exposure Class has submitted 531 Approved Claims for this benefit, resulting in 1,151 total Approved Claims for this benefit.  *Id.*  Although the Non-Exposure Class is not entitled to such relief under the S.A., PTHC is willing to provide for those who asked for it despite the additional cost to PTHC.  Each claim has a retail value of $19.99/month * 24 months = $479.76.  Declaration of Ryan D. Maxey, Esq. ("Maxey Decl.") ¶ 3, attached hereto as **Exhibit B**.  Accordingly, the retail value of this benefit is $552,203.76.

In addition to the monetary relief and Identity Defense Total Service, PTHC has taken and agrees to continue for 36 months an adjustment to its internal controls and systems to further secure its protected health information and personally identifiable information (the "Business Practice Commitments").  It is Class Counsel's understanding based on information provided by Defendant that the initial cost for PTHC's implementation of certain security was approximately $700,000, as follows: (i) $223,000 for enhanced email platform licenses, (ii) $38,193 for implementing multi-factor authentication, (iii) $67,880 for cybersecurity awareness training, (iv) $128,100 for endpoint detection, monitoring, and response systems, (v) $209,800 for additional dedicated security resources, (vi) $40,000 for annual risk management assessments and penetration testing by third-party.  Maxey Decl. ¶ 4. In addition to these initial costs, PTHC incurred and will incur: (i) approximately $300,000 in man hours for implementing and maintaining these changes and (ii) approximately $700,000 in annual subscription fees and vendor charges, for a total approximate investment by PTHC of $1.7M to date.  *Id.*

Altogether, the value of the Settlement, exclusive of any service award, attorney's fees, and litigation costs, is estimated at $2,889,444.44 (comprised of $98,209.88 in claims for Attested

6

Time or Out-of-Pocket Losses, $552,203.76 in retail value of claims for Identity Theft Total Service, $1,700,000 in the cost to date and estimated future costs for the Business Practice Commitments, and $539,030.80 in past and estimated future notice and administration costs).

### III.    Preliminary Approval and Notice

On May 5, 2023, Plaintiff moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 37). On January 22, 2024, the Court granted Plaintiff's motion. (ECF No. 39). Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 743,888 potential members of the Settlement Class via U.S. mail. *See* Fenwick Decl. ¶ 8. Notice was also provided via an internet website. *Id*. ¶ 4.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 37-1 at 43-56). The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on May 21, 2024, (ECF No. 39 at 16), and only three (3) exclusion requests and no objections have been received to date. Fenwick Decl. ¶ 17. The claim deadline was May 21, 2024, and approximately 2,492 claims have been received to date. *Id.* ¶ 13.

### IV.    The Settlement Merits Final Approval by the Court

In *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022), another data breach case, Judge Castel thoroughly

7

laid out the criteria for finally approving a class action settlement in the data breach context before analyzing those criteria and ultimately granting final approval of a class action settlement. Plaintiff relies on Judge Castel's Order throughout this motion as it offers guidance particularly useful in the data breach context and this Court's Preliminary Approval Order cited the Order with approval regarding the calculation of attorney's fees (ECF No. 39 at 5).

### A. Fairness, Reasonableness and Adequacy of the Settlement from the Standpoint of the Settlement Class.

Regarding the fairness, reasonableness, and adequacy of the Settlement from the standpoint of the Settlement Class, Judge Castel explained as follows:

> Rule 23(e) provides that "[t]he claims ... of a certified class ... may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e)(2) provides that if a proposed settlement "would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether" certain specific factors are satisfied. The Advisory Committee's notes on Rule 23(e)(2) state that the goal of the amendment "is not to displace any factor" previously adopted by any United States Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." The Advisory Committee explained that in certain jurisdictions, lengthy, multifactor tests risked distracting courts and parties from focusing on the key issues in a settlement review.
>
> Many of the requirements set forth in the amendments to Rule 23(e)(2) have long been used in the nine-factor test adopted by City of *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). To the extent that certain of the Grinnell factors are not encompassed by Rule 23(e)(2), the Court will discuss them separately.
>
> The Court will first review the factors set forth by Rule 23(e)(2), and then address the additional *Grinnell* factors.

*Id.* at *6.

### B. Rule 23(e)(2)(A): Whether Class Representatives and Class Counsel Have Adequately Represented the Class.

8

Regarding whether the class representative and Class Counsel have adequately represented the Settlement Class (Rule 23(e)(2)(A)), Plaintiff has submitted his declaration detailing his participation in this action, including reviewing the complaint and confirming the accuracy of the allegations therein, reviewing and approving the Settlement, and, throughout this action, communicating with Class Counsel regarding its status and any information needed from him. Declaration of Michael Everetts ¶¶ 2-4, attached hereto as **Exhibit C**. Class Counsel investigated publicly available information about the Data Breach; prepared the complaint; responded to Defendant's request for a pre-motion conference regarding its anticipated motion to dismiss, which challenged Plaintiff's Article III standing and whether Plaintiff alleged viable claims for negligence, breach of an implied contract, and breach of confidence; mediated Plaintiff's claims in person in New York; negotiated a term sheet and, later, a formal settlement agreement; and, ultimately, were able to obtain benefits for individuals whose information was not potentially impacted (*i.e.*, for time or money spent in response to receiving notice of the Data Breach) and significantly better benefits for those whose information was potentially impacted. Maxey Decl. ¶ 10. This weighs in favor of approving the proposed Settlement. *See, e.g.*, *In re Hudson's Bay*, 2022 WL 2063864, at *7 (concluding this factor weighed in favor of approving the proposed settlement where (i) the class representatives submitted declarations describing their participation in the action, including reviewing drafts of pleadings, conferring with counsel before mediation, discussing and executing the settlement agreement, closely following developments in the case, and closely reviewing relevant case documents and (ii) the plaintiffs' counsel drafted a consolidated pleading, responded to a motion to dismiss that was granted in part and denied in part, and responded to a second motion to dismiss that had not yet been resolved when the parties settled the case).

### C. Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length.

Regarding whether the Settlement was negotiated at arm's length (Rule 23(e)(2)(B)), prior to the Court ruling on the pre-motion conference, the parties engaged in mediation with mediator Andrew Nadolna, who has over 25 years of experience in mediation. Yanchunis Decl. ¶ 16. In advance of the mediation, the parties submitted mediation briefs advancing their respective positions on the merits of the claims and class certification. *Id.* On June 2, 2022, the parties conducted a second session with Mr. Nadolna. *Id.* Over the ensuing months, the parties continued to negotiate the terms of a potential settlement. *Id.* After coming to an agreement in principle, the parties finalized the terms of their Settlement Agreement including the attached exhibits. *Id.* After extensive arm's length settlement negotiations, the parties were able to reach an agreement. *Id.* This weighs in favor of approving the proposed Settlement. *See, e.g.*, *In re Hudson's Bay*, 2022 WL 2063864, at *7 (concluding this factor weighed in favor of approving the proposed settlement where "[t]he parties retained [a] retired Judge … as a private mediator, … held one full-day, in-person mediation session[, ]… reached a tentative agreement in principle at the close of that session and agreed to a Memorandum of Understanding[, ] and thereafter continued to negotiate details of the Settlement Agreement").

### D. Rule 23(e)(2)(C): The Relief Provided to the Class Is Adequate.

#### 1. Rule 23(e)(2)(C)(i): Costs, Risks and Delay of Trial and Appeal.

Regarding the costs, risks, and delay of trial and appeal (Rule 23(e)(2)(C)(i)), this action did not settle until after PTHC filed a request for a pre-motion conference regarding its anticipated motion to dismiss, which challenged Plaintiff's Article III standing and whether Plaintiff alleged viable claims for negligence, breach of an implied contract, and breach of confidence. (ECF No. 11). After Plaintiff filed his response (ECF No. 13) and the Court held the pre-motion conference, directing the Parties "to attend either private mediation or EDNY mediation" (ECF No. 20), the

Parties proceeded to mediation. Had this action not resolved at mediation, Plaintiff would have faced "the attendant risks and uncertainty of litigation, as well as the difficulties and delays inherent in such litigation including the challenges to certification of a class." Yanchunis Decl. ¶ 22. Plaintiff would have also incurred "high cost and expense, including the cost of cyber and damage experts." *Id.* Finally, continuing this action would have raised "the risks and delay of trial and associated appeals." *Id.* ¶ 24. This weighs in favor of approving the proposed Settlement. *See, e.g.*, *In re Hudson's Bay*, 2022 WL 2063864, at *7-8 (concluding this factor weighed in favor of approving the proposed settlement where "[t]he facts of the case involve[d] data-security issues," "the Court granted in part and denied in part the motion to dismiss," a second motion to dismiss "disputed whether plaintiffs had adequately alleged injuries in fact and whether they had plausibly stated a claim for relief," "[i]n the event that some portion of plaintiffs' claims survived the defendants' motion to dismiss, the case would likely have required extensive document discovery, a contested motion for class certification, and a summary judgment motion, followed by the trial of any surviving claims," and "[c]ontinued litigation, including discovery, adjudication of a summary judgment motion, and trial, would have prolonged the litigation and significantly increased the parties' expenses").

### 2. Rule 23(e)(2)(C)(ii): Effectiveness of the Proposed Method of Distributing Relief to the Class.

Regarding the effectiveness of the proposed method of distributing relief to the class (Rule 23(e)(2)(C)(ii), the Settlement proposed two tiers of relief depending on whether a Settlement Class Member is a member of the Exposure Class or the Non-Exposure Class. Exposure Class members may recover up to $7,500.00 for unreimbursed costs or expenditures that are fairly traceable to the security breach and payment for up to three (3) hours of time spent remedying issues related to the security breach at Twenty Five Dollars ($25) per hour. Non-Exposure Class

Members may recover up to $125 per Non-Exposure Class Member for unreimbursed costs or expenditures that are fairly traceable to receipt of notice from Defendant of the security breach and payment for up to three (3) hours of time spent remedying issues related to the receipt of notice from Defendant of the security breach at Twenty Five Dollars ($25) per hour. This weighs in favor of approving the proposed Settlement. *See, e.g.*, *In re Hudson's Bay*, 2022 WL 2063864, at *8 ("conclud[ing] that the plan of allocation [wa]s designed to fairly allocate payment to members of the settlement class" because "[a] payment of $30 is fair, reasonable and adequate compensation to a retail customer who spent some time monitoring financial accounts following a data breach but did not incur additional losses, such as fraudulent charges or withdrawals").

### 3. Rule 23(e)(2)(C)(iii): The Terms of the Proposed Attorneys' Fees, Including the Timing of Payment.

Regarding the terms of the proposed attorney's fees, including the timing of payment (Rule 23(e)(2)(C)(iii), Plaintiff has filed a separate motion regarding attorney's fees (ECF No. 40) and, as directed in the Preliminary Approval Order (ECF No. 39 at 5), a supplemental motion for attorney's fees, costs, expenses, and service award (ECF No. 42).

### 4. Rule 23(e)(2)(C)(iv): Any Agreement Required to be Identified under Rule 23(e)(3).

Regarding any agreement required to be identified under Rule 23(e)(3), no agreements have been made in connection with the proposed Settlement apart from those identified in this motion and, as referenced in the Settlement Agreement, the Parties agreement that PTHC may void the Settlement Agreement in the event there are more opt-outs than listed in a separate letter agreement (S.A. ¶ 4.4). Maxey Decl.") ¶ 6. This weighs in favor of approving the proposed Settlement. *See In re Hudson's Bay*, 2022 WL 2063864, at *9 (concluding "[t]he parties have adequately identified their agreement pursuant to Rule 23(e)(3)" where the plaintiffs' counsel made a similar assertion).

### 5. Rule 23(e)(2)(C): Whether the Proposal Treats Class Members Equitably Relative to Each Other.

Regarding whether the proposal treats class members equitably relative to each other (Rule 23(e)(2)(C), it allows Exposure Class members, whose information was potentially exposed in the Data Breach, to obtain reimbursement for unreimbursed costs or expenditures that are fairly traceable to the security breach and for time spent remedying issues related to the security breach. It allows Non-Exposure Class Members, who received notice of the Data Breach but whose information was not potentially exposed in the Data Breach, to obtain reimbursement for unreimbursed costs or expenditures that are fairly traceable to receipt of notice from Defendant and for time spent remedying issues related to the receipt of notice from Defendant of the security breach. This weighs in favor of approving the proposed Settlement. *See In re Hudson's Bay*, 2022 WL 2063864, at *9 (concluding "[t]he plan of allocation compensates members of the class equitably relative to each other" where it "was designed to provide equal treatment to those who did not incur out-of-pocket expenses while also allowing for individualized compensation to class members who incurred expenses as a result of the breach").

### E. The *Grinnell* Factors.

#### 1. The reaction of the class to the settlement.

Regarding the reaction of the class to the settlement, there have been two (2) requests for exclusion and no objections out of 743,888 notice recipients. This weighs in favor of approving the proposed Settlement. *See In re Hudson's Bay*, 2022 WL 2063864, at *9 (concluding this factor weighed in favor of approval where there were no requests for exclusion or objections); *see, e.g.*, *In re Canon U.S.A. Data Breach Litig.*, No. 1:20-cv-06239-AMD-SJB, ECF No. 787 at 4 (E.D.N.Y. May 9, 2024) (Donnelly, J.) (granting final approval of data breach class action settlement where 2 class members sought exclusion and none objected); *In re Waste Mgmt. Data*

13

*Breach Litig.*, No. 1:21-CV-06199-DLC, 2024 WL 1134736, at *1-4 & Ex. A (S.D.N.Y. Mar. 15, 2024) (Cote, J.) (granting final approval of data breach class action settlement where 27 class members sought exclusion); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-02667-GHW, 2023 WL 123201, at *2 (S.D.N.Y. Jan. 5, 2023) (Woods, J.) (granting final approval of data breach class action settlement where 1 class members sought exclusion and none objected).

### 2. The size of settlement in the range of possible recovery.

Regarding the size of the settlement in the range of possible recovery, the range of possible recovery for the Non-Exposure Class is challenging to fairly estimate because most data breach settlements do not obtain relief for individuals who received notice of a data breach but did not have their personal information exposed. The fact that Plaintiff was able to obtain benefits for these individuals should weigh in favor of approving the proposed Settlement. As for the Exposure Class, the benefits obtained via the Settlement are comparable to those obtained via other data breach class action settlements in this Circuit. *See, e.g.*, *Torretto*, 2023 WL 123201, at *3 ("Claimants were able to submit claims for Out-of-Pocket Losses and Documented or Attested Time"); *In re Hudson's Bay*, 2022 WL 2063864, at *1 ("The settlement provides for a $30 payment to any 'Tier 1' claimant who … confirms that he or she spent some amount of time monitoring account information after the breach. A 'Tier 2' claimant will be reimbursed for documented out-of-pocket expenses incurred as a result of the breach, such as costs and expenses related to identity theft or fraud, late fees, and unauthorized charges and withdrawals, in an amount not to exceed $5,000 per claimant."). This weighs in favor of approving the proposed Settlement. *See, e.g.*, *id.* at *10 (concluding this factor weighed in favor of approval where the settlement payments were "consistent with payments in similar data-breach settlements").

### 3. Risks of Maintaining the Class Action through Trial.

Regarding the risks of maintaining the class action through trial, PTHC would likely have

opposed any motion for class certification, thus increasing the parties' expenses and further delaying proceedings. Maxey Decl. ¶ 7. Moreover, Class Counsel is unaware of any data breach class actions that have made it to trial, making it particularly challenging to assess the likelihood of each potential outcome. *Id.* ¶ 8. This weighs in favor of approving the proposed Settlement. *See, e.g.*, *In re Hudson's Bay*, 2022 WL 2063864, at *10 (concluding this factor weighed in favor of approval where "Defendants would likely have opposed any motion for class certification. A contested motion would have increased the parties' expenses and further delayed proceedings. Defendants likely would have urged that individualized proof of cardholder transactions and individual plaintiffs' injuries caused by the breach were more substantial than the generalized proof required to establish plaintiffs' claims. As noted, the parties point to no data breach class actions that have been resolved at trial").

### 4. The Ability of Defendants to Withstand Greater Judgment.

Regarding the ability of PTHC to withstand greater judgment, Class Counsel obtained the proposed settlement benefits without regard to PTHC's ability to withstand a greater judgment; in other words, the benefits were not compromised due to PTHC's financial condition. Maxey Decl. ¶ 9. This weighs in favor of approving the proposed Settlement.

### F.  Notice to the Class.

"Rule 23(c)(2)(B) requires potential class members to receive 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.'" *In re Hudson's Bay*, 2022 WL 2063864, at *10. In *Hudson's Bay*, the Court approved notice via "banner advertisements on the internet and 'earned media' obtained through a press release sent to traditional and online media outlets." *Id.* at *10-11.

Here, the notice was superior to that, including not only notice via the settlement website, but also directly mailed notice to 743,888 class members. Fenwick Decl. ¶ 8. *See, e.g.*, *In re Wasdte Management Data Breach Litig.*, 2024 WL 1134736, at *1 (granting final approval after finding notice to class members was properly disseminated via postcard notice and the settlement website); *Torretto*, 2023 WL 123201, at *3 (granting final approval of data breach class action settlement after finding notice to class members was properly disseminated via directly mailed postcard notice).

## V. Conclusion

Considering the factors bearing on the fairness, adequacy, and reasonableness of the settlement, the Court should approve the notice to class members and find that the settlement meets the standard for final approval under Rule 23(e). Plaintiff respectfully requests the Court enter the order proposed by the Parties granting final approval and certifying the Settlement Class; grant Plaintiff's Unopposed Initial Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 40), as supplemented by Plaintiff's Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 42); and enter a final judgment dismissing this case.

Dated: July 1, 2024

Respectfully submitted,

*/s/ Ryan D. Maxey*
Jonathan Michael Sedgh
**Morgan & Morgan**
350 Fifth Avenue
Suite 6705
New York, NY 10118
212-225-6747
jsedgh@forthepeople.com

John A. Yanchunis

jyanchunis@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, FL 33602
(813) 448-1125
ryan@maxeyfirm.com

* *admitted pro hac vice*

***Attorneys for Plaintiff and the Proposed Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Ryan D. Maxey*