UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MICHAEL EVERETTS,
on behalf of himself and all others
similarly situated,

                            Plaintiff,

        -against-

PERSONAL TOUCH HOLDING CORP.,
a Delaware corporation,

                            Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**FILED**
**CLERK**
3/28/2025 1:17 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
21-cv-2061 (JMA) (ARL)

**AZRACK, United States District Judge:**

Presently before the Court are the following motions concerning the parties' settlement of this class action:

(i) Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (the "Final Approval Motion") (ECF No. 44); and

(ii) Plaintiff's Unopposed Initial Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 40), Plaintiff's Unopposed Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 42), and Plaintiff's Unopposed Second Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 48) (collectively the "Fees and Service Award Motions").

On December 29, 2024, Plaintiff submitted a proposed order concerning these pending motions. (ECF No. 49.) Having fully considered the issues, the Court hereby GRANTS both the Final Approval Motion and the Fees and Service Awards Motions and ADOPTS the proposed order at ECF No. 49, with modifications to the Fees, Costs, and Service Award as set forth in this Order. The Court adopts, with certain modifications, Plaintiff's Proposed Order concerning both Final Approval and Service Awards. A copy of that order will be docketed separately. The instant order addresses the issues of Attorney's Fees and Costs.

I. **ATTORNEY'S FEES, LITIGATION COSTS, AND SERVICE AWARD**[1]

A. <u>Attorney's Fees and Litigation Costs</u>

Class Counsel moved for an award of attorneys' fees and litigation costs, which Defendant Personal Touch Holding Corp. ("PTHC") did not oppose. (ECF No. 48.) Class Counsel requested $495,064.26 in attorney fees and $14,935.74 in litigation costs. (Id.) For the reasons that follow, the Court concludes that an attorneys' fees award of $297,038.56 along with $14,935.74 in litigation costs is reasonable.

1. **Legal Standard**

Class Counsel in a class action settlement may be entitled to a "reasonable fee." <u>Hesse v. Godiva Chocolatier, Inc.</u>, No. 19-CV-0972, 2022 WL 22895466, at *10 (S.D.N.Y. Apr. 20, 2022) (citing <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 43, 47 (2d Cir. 2000)). A fees award "must reflect 'the actual effort made by the attorney to benefit the class' . . ." <u>Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.</u>, 504 F.3d 229, 249 (2d Cir. 2007) (quoting <u>City of Detroit v. Grinnell Corp.</u>, 560 F.2d 1093, 1099 (2d Cir. 1977)).

Plaintiffs' fees application seeks an award as a percentage of the overall "settlement value" while applying a lodestar cross-check. In a common fund case, a court may calculate a fees award based on a percentage of the total recovery. See <u>In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.</u>, No. 18-CV-8472, 2022 WL 2063864, at *13 (S.D.N.Y. June 8, 2022) (citing <u>Goldberger</u>, 209 F.3d at 47). This case, like <u>Hudson's Bay</u>, is not a true common fund case. As explained in the Court's January 22, 2024 Order, the Court, in calculating attorney's fees, "will

---

[1] The Court presumes familiarity with the factual background and procedural posture of this case. The relevant facts for purposes of this Order are taken from (i) Plaintiff's Final Approval Motion (ECF No. 45); and (ii) Plaintiff's Unopposed Initial Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 41), Plaintiff's Unopposed Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 43), and Plaintiff's Unopposed Second Supplemental Motion for Service Award and Award of Attorney's Fees and Litigation Costs (ECF No. 48).

2

consider the monetary benefit that will be paid to the class and not the $3 million 'Aggregate Cap'" in the Settlement Agreement. (ECF No. 39 at 5.)

Nevertheless, the general principles that apply to common fund cases still have some relevance here. "In common fund cases, courts typically use either the lodestar method or the percentage method to compute attorneys' fees." Hudson's Bay, 2022 WL 2063864, at *13 (quoting Central States, 504 F.3d at 249). "It is up to the district court, rather than counsel, to choose whether to use the lodestar or percentage methods." Id. (quoting Allen v. Taylor, 795 Fed. App'x 79, 80 (2d Cir. 2020) (summary order)). "In determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." Goldberger, 209 F.3d at 47. "[T]he percentage method . . . directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (citation and quotation marks omitted). "[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage. Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50 (internal citation omitted); see also Fresno Cnty. Emps.' Retirement Ass'n v. Isaacson/Weaver Fam. Tr., 925 F.3d 63, 68 (2d Cir. 2019) ("A common-fund-percentage fee must still be evaluated for reasonableness, but may exceed the lodestar – i.e., it may be less than, equal to, or greater than the lodestar.") (internal citation omitted).

"Of course, no matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement;

3

and (6) public policy considerations." <u>Goldberger</u>, 209 F.3d at 50 (quotation marks and ellipsis omitted). "[A] district court can avoid a 'windfall' by adjusting 'the percentage awarded in order to come up with a fee it deems reasonable in light of the <u>Goldberger</u> factors.'" See <u>Kornell v. Haverhill Ret. Sys.</u>, 790 Fed. App'x 296, 298 (2d Cir. 2019) (summary order) (quoting <u>Masters v. Wilhelmina Model Agency, Inc.</u>, 473 F.3d 423, 437 (2d Cir. 2007)).

Although this is not a true common fund, the Court finds that the percentage method is still an appropriate guide for the Court's analysis. See <u>Hesse</u>, 2022 WL 22895466, at *11 (using the percentage method to calculate attorney's fees and focusing on the total value of the settlement where unclaimed funds would be retained by defendants).

### 2. Requested Fee in Relation to the Total Value of the Settlement

The Court's January 22, 2024 Order explained that, in awarding attorney's fees, the "Court will consider the monetary benefit that will be paid to the class and not the $3 million "Aggregate Cap.'" (ECF No. 39 at 5.) In response, Plaintiff asserts that in determining the monetary value of the settlement, the Court should consider not only the monetary payment to the class totaling $98,284.88, but also other aspects of the settlement, including: (1) past and future administrative expenses paid to the Settlement Administrator; (2) the retail value of credit monitoring services made available to the class; (3) cybersecurity measures Defendant has undertaken, and will continue to undertake; and (4) attorney's fees.

In addition to the monetary payment of $98,284.88 that the class will receive, the Settlement Agreement provides that defendant will pay the expenses borne by the claims administrator, which include settlement administration fees of $539,030.80 ($369,030.80 incurred through July 19, 2024 and $170,000.00 estimated to be incurred to complete administration of the settlement). (ECF No. 48 at 3; Supplemental Declaration of Patrick Passarella of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Passarella Decl.") ¶ 6,

4

attached as Exhibit A.) "Though not a direct payment to class members, the costs of claims administration would typically be drawn from a common fund, and reflects a benefit to the class that was based on the efforts of plaintiffs' counsel." Hudson's Bay, 2022 WL 2063864, at *20 (citing Masters, 473 F.3d at 438).

The Settlement Agreement also provides for structural relief that PTHC has taken and agrees to continue for 36 months in the form of an adjustment to its internal controls to further secure its protected health information and personally identifiable information. (ECF No. 48 at 4.) According to Class Counsel, based on information provided by Defendant, the initial cost for PTHC's implementation of certain security enhancements was approximately $700,000, as follows: (i) $223,000 for enhanced email platform licenses; (ii) $38,193 for implementing multifactor authentication; (iii) $67,880 for cybersecurity awareness training; (iv) $128,100 for endpoint detection, monitoring, and response systems; (v) $209,800 for additional dedicated security resources; and (vi) $40,000 for annual risk management assessments and penetration testing by a third-party. (Id.; Supplemental Declaration of Co-Class Counsel Ryan Maxey ¶ 4; see also ECF No. 41 at 8-9.) In addition to these initial costs, PTHC allegedly incurred and will incur: (i) approximately $300,000 in man hours for implementing and maintaining these changes; and (ii) approximately $700,000 in annual subscription fees and vendor charges, for a total approximate investment by PTHC of $1.7M to date. (Id.; Maxey Decl. ¶ 4.) The only support for this calculation is the declaration of Class Co-Counsel Ryan Maxey, which notes that it "is Class Counsel's understanding based on information provided by Defendant." (Maxey Decl. ¶ 4.) There is no documentation that further explains the $1.7 million calculation. It is obviously in Defendant's own economic self-interest to secure their internal systems following a significant breach, regardless of Plaintiff and Class Members' claims in this case. While the structural relief does provide some prospective benefit to class members—a fact that the Court will generally take

5

into consideration in determining fees—the Court is unable to determine an approximate value that the structural relief provides to the class. See Hudson's Bay, 2022 WL 2063864, at *21; In re Anthem, Inc. Data Breach Litig., No. 15-MD-02617, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (weighing increased cybersecurity spending as a "relevant circumstance" in awarding fees, but rejecting argument that size of the common fund should include increased cybersecurity spending required by the settlement agreement because it erroneously "assumes that every dollar [defendant] spends on cybersecurity above pre-breach levels equals one dollar to the Class").[2]

Finally, Plaintiff notes that PTHC will also separately pay the cost of two years of Identity Defense Total Service for members of both the Exposure Class and the Non-Exposure Class who make a claim for this benefit, subject to an aggregate cap of $67,000.00. (ECF No. 48 at 3.) While Plaintiff calculates the overall "retail value" of such services as $552,683.52, (Id. at 4), that amount does not represent what the Defendant is paying and will not be counted as part of the quantifiable

---

[2] Not only is it difficult to quantify the value of this "structural relief" to the class, but it is also difficult to determine how much of this spending is even directly attributable to this settlement. According to the Settlement Agreement, "Defendant has taken and agrees to continue for 36 months an adjustment to its internal controls and systems to further secures its PHI and PII," including certain specific actions outlined in the Settlement Agreement. (Settlement Agreement at 15–16, ECF No. 37-1 (emphasis added).) Thus, some or all the initial costs for these measures appear to have been incurred by Defendant before this Settlement was reached and possibly some or all of both the past and future costs may have been incurred by Defendant regardless of this Settlement. See In re Anthem, 2018 WL 3960068, at *8 (I]t is difficult to isolate which portion of [defendant's] increase in its cybersecurity spending is attributed solely to the instant lawsuit as opposed to money that Anthem would have spent anyway in the aftermath of the data breach at issue"). Relatedly, the Court also notes that after the instant Settlement Agreement was signed, but before the Court granted preliminary approval to the settlement, Defendant entered into a separate settlement with the New York State Attorney General that provided certain prospective relief including: (i) Maintaining a comprehensive information security program that includes regular risk assessments, regular testing and monitoring of existing safeguards, and regular updates to the information security program; (ii) Maintaining reasonable access control and authentication procedures; (iii) Encrypting personal and health information; (iv) Implementing a continuous logging and monitoring system, anti-malware protections, an intrusion detection and prevention solution, and an email filtering and phishing solution; (v) Developing a vulnerability management program that includes regular vulnerability scanning and penetration testing; (vi) Updating its data collection, retention, and disposal practices to ensure that personal and health information is maintained only to the minimum extent necessary to accomplish legitimate business purposes; (vii) Conducting annual employee security training; and (viii) Establishing reasonable vendor management procedures. (See New York State Attorney General Press Release, "Attorney General James Secures $350,000 from Long Island home Health Care Company for Failing to Protect Patient and Employee Data," (Oct. 18, 2023), https://ag.ny.gov/press-release/2023/attorney-general-james-secures-350000-long-island-home-health-care-company. Furthermore, PTHC was required by that settlement to "offer affected consumers free identity theft protection and recovery services." (See id.) Therefore, the prospective relief mandated by the New York State settlement overlaps with the "structural relief" identified in the instant Settlement Agreement.

6

valuable of the benefits to the class. See In re Anthem, 2018 WL 3960068, at *7 (N.D. Cal. Aug. 17, 2018). While Plaintiff does not attempt to provide an alternative valuation for credit monitoring services (and does not indicate how much PTHC is likely to pay for these services based on counsel's experience with prior settlements), the Court finds that these credit monitoring services should be valued at $50,000.

Plaintiff's fee application of $495,064.26 seeks a significant percentage of the settlement. In this case, the benefit of the settlement to the class includes the $98,284.88 to be paid directly to claimants, the $539,030.80 in costs for claims administration, and the $50,000 for Identity Defense Total Service benefits. Plaintiff's requested fee award is approximately 72% of the combined value of the payment to the class and the expenses of the settlement administration. Counsel's request for a total of $510,000 in fees and expenses would constitute 42.6% of defendant's total payments (including the request fees themselves) to resolve this case. The requested fee's relation to the value of the settlement to the class weighs against the size of the fees request.

### 3. Plaintiff Will Be Awarded $297,038.56 in Attorneys' Fees

Having reviewed the Goldberger factors and considered the structure of the parties' settlement, the Court will apply a 40% reduction to Plaintiff's requested fees award of $495,064.26, and award fees in the total amount of $297,038.56. As noted, the six Goldberg factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation[ ]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger, 209 F.3d at 50.

First, counsel has devoted time and resources to representing the Class. They filed a Class Action Complaint, then negotiated a settlement with PTHC for approximately one year, including two full-day mediations. (ECF No. 41 at 2.) Following settlement, counsel submitted their motions for preliminary and final approval, as well as the present motion for attorney's fees and

7

costs. (See ECF Nos. 37, 40, 42, 44, 48.). This is a reasonable amount of effort on behalf of the class.

Second, the size and difficulty of the issues in this case weigh in favor of approving an attorney's fee award. See Kurtz v. Kimberly-Clark Corp., No. 14-CV-1142, 2024 WL 184375, at *17 (E.D.N.Y. Jan. 17, 2024) ("In evaluating the second Goldberger factor, the size and difficulty of the issues in a case are significant factors to be considered[.]" (quotations omitted)). The complaint in this case was filed in 2021 and involved a data breach that prompted PTHC to send notices to approximately 753,107 individuals. (ECF No. 41 at 18.) "If this case had not settled, it is likely that discovery, motion practice and trial would have prolonged the action by several years and significantly increased the attorneys' fees." Hudson's Bay, 2022 WL 2063864, at *19; see Maxey Decl. ¶ 10. This speaks to a complex, rather than straightforward, class action litigation. This factor weighs in favor of an award of attorneys' fees.

Third, Plaintiff would have faced serious risks if the case had proceeded with litigation. Among other things, Plaintiff likely would have encountered obstacles to establishing class-wide damages, particularly due to the inherent uncertainty of quantifying injury in a data breach case. See In re Canon U.S.A. Data Breach Litigation, No. 20-CV-6239, 2024 WL 3650611, at *9 (E.D.N.Y. Aug. 5, 2024) (collecting cases). Because no data breach class action has reached the trial stage—see Hudson's Bay, 2022 WL 2063864, at *9–10—the trial risk is difficult to quantify and raises the uncertainty involved in the case, a fact that counsels in favor of both settling the case and awarding counsel a fee for obtaining a reasonable settlement.

Fourth, the attorneys' skill weighs in favor of approving a fee. Counsel negotiated a significant and reasonable settlement that provides monetary and structural relief to class members.

Fifth, as discussed supra Section I. A. 2., in examining the reasonableness of the fee, the Court must examine the fee in relation to the recovery by class members. For the reasons discussed

8

supra Section I. A. 2, Plaintiff's fee application of $495,064.26 seeks a significant percentage of the settlement. It is approximately 72% of the combined value of the payment to the class and the expenses of the settlement administration. Counsel's combined fees and expenses of $510,000 would total 42.6% of defendant's total payment (including the attorney's fees) to resolve this case. The requested fee's relation to the settlement weighs against the size of such a fee request. An attorneys' fees award of $297,038.56 constitutes approximately 30% of the total value of the settlement (inclusive of the attorney's fees themselves). Not including the attorney fees themselves, a fees award of $297,038.56 constitutes 43% of the monetary value of the settlement, including the payments to class members, administrative costs, and the approximate cost of credit monitoring services. The Court finds that such a percentage is reasonable and appropriate under the specific circumstances of this case.

Sixth, public policy favors a fees award. The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy. See Hudson's Bay, 2022 WL 2063864, at *21.

### 4.     A $297,038.56 Fee Award is Reasonable Under a Lodestar Cross Check

The Court also applies a lodestar cross check. As part of the cross check, the lodestar is determined by "multiplying the hours spent by each attorney and paraprofessional . . . by their current hourly rates[.]" Hesse, 2022 WL 22895466, at *13.

The reasonableness of the $297,038.56 fee award is confirmed by the lodestar method. Class Counsel's calculated lodestar fees are $304,045.00 for 312.3 hours of work billed. (ECF No. 48 at 6.) This calculation would result in a negative lodestar multiple of 0.98 against the fee award of $297,038.56. However, the Court finds that Class Counsel's calculated lodestar fees are excessive based on requested billing rates that are far above the average range in this District. "[I]n complex matters, courts [in recent cases] have awarded rates that have ranged from approximately

9

$375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." Alcon Vision, LLC v. Lens.com, Inc., No. 18-CV-407, 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023) (collecting cases); see Kurtz, 2024 WL 184375, at *14 (collecting cases). Here, John Yanchunis, Kenya Reddy, Ryan Maxey, and Patrick Barthle—all attorneys at Morgan & Morgan[3]—request $1600, $1000, $800, and $800 per hour, respectively. (ECF No. 48 at 5.) All of these rates exceed the usual range of $375 to $630 for partners in complex matters. See Alcon Vision, 2023 WL 8072507, at *7. Additionally, Jennifer Cabezas, a paralegal at Morgan & Morgan, requests a rate of $225 per hour, (ECF No. 48 at 6), even though the accepted range for paralegals in complex matters is between $100 and $125. See, e.g., Alcon Vision, 2023 WL 8072507, at *7.

Counsel has provided details about the qualifications and experience of these attorneys, (see ECF No. 41 at 14-18.) Although counsel is skilled and experienced, they have provided no compelling justification to award an hourly rate higher than the range typically given to similar professionals in other complex cases. See, e.g., NAACP v. E. Ramapo Cent. Sch. Dist., No. 17-CV-8943, 2020 WL 7706783, at *5 (S.D.N.Y. Dec. 29, 2020) ("[W]here a prevailing party fails to provide biographical information on an attorney for whom fees are sought, courts have discretion to lower the requested rate for purposes of the lodestar calculation and award fees at the lower end of the prevailing range.") (collecting cases), report and recommendation adopted, Order (Mar. 30, 2021); ACE Ltd. v. CIGNA Corp., No. 00-CV-9423, 2001 WL 1286247, at *6 (S.D.N.Y. Oct. 22, 2001) ("CIGNA's failure to produce adequate information regarding its attorneys' and paraprofessionals' rates alone justifies a reduction in fees.") (collecting cases). As a result, the Court uses the following hourly rate for each professional in calculating the lodestar: $600 per hour for John Yanchunis; $350 per hour for Kenya Reddy; $350 per hour for Ryan Maxey; and

---

[3] The Court notes that attorney Ryan Maxey started his own law firm in July 2023 but continued to work on this case. (See ECF No. 48 at 6.)

10

$350 per hour for Patrick Barthle. See In re Canon, 2024 WL 3650611, at *7 (adjusting hourly rates to these figures for the same attorneys). Furthermore, the Court will use an hourly rate of $100 per hour for paralegal Jennifer Cabezas. See id. (adjusting this paralegal's rate to $100 per hour).

Utilizing these adjusted rates, a reasonable lodestar for this case, as calculated by the Court, is $124,030. "[C]ourts may use their discretion to increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." Wal-Mart, 396 F.3d at 123 n.27. Although the lodestar method results in a fee that is presumptively reasonable, "an unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case." Fresno Cnty. Emps.' Retirement Ass'n, 925 F.3d at 67–68. Here, counsel took on representation of the class on a full contingency basis, which is a risk that warrants a multiplier enhancement to the lodestar. (ECF No. 41 at 19); see Fresno Cnty., 925 F.3d at 70 ("[C]lass counsel's ability to freely represent other clients is limited by the risk [they] have assumed that the class's cause will be unsuccessful.").

An attorneys' fee award of $297,038.56 is a 2.39 multiplier of the Court's recalculated lodestar of $124,030. In this case, a 2.39 multiplier on the lodestar for a fee of $297,038.56 is, given all the circumstances here, reasonable. See Reynolds v. Marymount Manhattan Coll., 22-CV-06846, 2023 WL 6977635, at *2 (S.D.N.Y. Oct. 23, 2023) (data breach case deeming 1.1 multiplier "well within the range of reasonable multipliers" and citing cases allowing multipliers of 1.14 and 1.94, the latter deeming 1.82 the "median multiplier . . . in consumer cases"). The Court finds that a multiplier of 2.39, resulting in a fee of $297,038.56, is presumptively reasonable for counsel's efforts in this case.

11

### 5. Litigation Fees

Plaintiff's counsel seeks $14,935.74 in litigation costs. These expenses are summarized in Plaintiff's filings with the Court and in the attorney affidavits attached to these submissions. (See ECF No. 41 at 5; Maxey Decl. ¶ 19.) They include routine expenses such as court fees, mediation fees, transportation, meals, and printing. The expenses are reasonable, and the Court grants Plaintiff's motion seeking $14,935.74 in litigation costs.

## II.   CONCLUSION

For the reasons stated above, the Court hereby GRANTS Plaintiff's request for Attorney's Fees and Costs as set forth in this Order.

**SO ORDERED.**

Dated:   March 28, 2025
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE